**Harold R. McCOMBS and Clara F. McCombs, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Ruby Mae McCOMBS, Respondent.**

**Nos. 9757, 9758.**

United States Court of Appeals Tenth Circuit.

July 3, 1968.

---

Belmore T. Martin, Denver, Colo., for petitioners Harold R. McCombs and Clara F. McCombs.

Bennet N. Hollander, Atty., Department of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, and David O. Walter, Attys., Department of Justice, on the brief), for Commissioner of Internal Revenue.

Before PICKETT, SETH and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

The taxpayer, Harold R. McCombs, petitions for a review of a decision of the Tax Court determining that payments made by him to his former wife in satisfaction of a promissory note which was executed and delivered as authorized by a divorce decree were not alimony, or payments in lieu thereof, discharging a legal obligation imposed because of the marriage relationship,[1] and therefore not

---

1. The applicable provisions of 26 U.S.C. § 71 are as follows:

"Sec. 71. Alimony and Separate Maintenance Payments.

(a) *General Rule.—*

(1) *Decree of divorce or separate maintenance.—*If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * *

(c) *Principal Sum Paid In Installments.—*

(1) *General Rule.—*For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) *Where period for payment is more than 10 years.—*If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum

deductible by the taxpayer under 26 U.S. C. § 215. Taking a protective position in a related case, the Commissioner petitions for a review of the Tax Court decision holding that the aforesaid payments received by Ruby Mae McCombs, the former wife, were not taxable as income to her. The petitions have been consolidated for disposition here.

The facts are not in dispute. After 30 years of marriage, the taxpayer and his wife Ruby were divorced in 1957. At the time of the marriage the McCombs were without money or property, but by combining their efforts and savings, which included substantial earnings by Ruby, they developed a profitable business. The business was later incorporated and at the time of the divorce 53,988 shares of stock had been issued to Harold, 3000 shares to Ruby, and 3012 shares to a third party. The divorce court fixed the value of the stock at $3.34 per share. The net receipts from the sale of the family home were $18,363.81, and there was some other personal property. The divorce court also found that the net value of all the property was $196,454.12. The court undertook to divide the property equally between the parties with no further obligation on the part of the husband for the support and maintenance of the wife.[2] It is apparent that the court desired to leave the business to the husband, with the requirement that the wife receive in money the value of her share of all the property. The decree provided that most of the proceeds from the sale of the home, together with other personal

property, be delivered to Ruby, who was required to assign to McCombs her 3000 shares of stock in the company. There remained due her the sum of $67,000, which amount was to be paid by McCombs within 30 days, or if he should so elect, he had the option of delivering to Ruby his promissory note for $67,000 bearing 4% per annum interest, payable in monthly installments of $495.60 or more until fully paid, the note to be secured by a deposit of all the company stock owned by the husband. McCombs elected to satisfy the divorce decree by the note method described therein. The conventional installment note was executed with the added provision that, if the husband died, the balance due on the note would immediately become due and payable. The taxpayer made the aforesaid installment payments and deducted the amount thereof from his gross income for the taxable years 1960, 1961, 1962, 1963 and 1964, respectively. The Commissioner disallowed the deductions and assessed a deficiency in income taxes for those years. The Tax Court, upon petition to redetermine the deficiencies, found the payments on the $67,000 note "were not alimony payments made by Harold to Ruby Mae but were payments on a property settlement as ordered by the Court", and were not deductible from the gross income of Harold under Section 215.

The division of marital property by the Colorado divorce was based upon Ruby's substantial contribution to the accumulation of the assets of the marital estate.[3]

which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received."

2. The divorce decree stated that "in view of the amount of property being awarded to the plaintiff here the Court feels that there should be no award for permanent alimony."

3. In its decision, the divorce court said: "At the time of the marriage, neither party had any money. The wife was in nurse's training, and the husband was working for Auto Equipment Company

at a very small salary. This job ended and the husband farmed in 1933 and worked at odd jobs in the next few years in order to help obtain support for the family. It was now the height of the Depression, and the husband found himself unemployed during a portion of this period. Finally, the husband got employment with the Agricultural Administration at Brighton at $150.00 a month. In 1936, the husband quit this Government job and went back to the Auto Equipment Company at $175.00 a month.

Shortly after the marriage, the wife obtained employment and worked as a nurse and operated a beauty shop, pooling

The court made no attempt to determine the extent or the dollar value of the husband's obligation to pay alimony or support money to Ruby. The installment payments in lieu of a cash payment were to continue without regard to the death or remarriage of Ruby. The amount was arrived at solely on the basis of the value of the marital estate accumulated through the joint efforts and contributions of a husband and wife, without reference to any obligation to pay alimony or support money. There were no limitations on Ruby's right to negotiate the note. The record does not disclose that any consideration was given the monthly amount that Ruby needed for her support and maintenance. Further change in the economic status of either party would not alter liability. The income of the husband was not shown to be a factor in arriving at the amount of the installments.

For income tax purposes, Section 71 is directed toward periodic payments made to a wife, or former wife, as alimony or support money. The prerequisite of alimony or support also applies to the provisions of Section 71(c) for treating installments on a principal sum which may be paid over more than 10 years as periodic payments. The statutory purpose is to permit a husband, or former husband, to deduct from his gross income such periodic payments which are made to satisfy a legal obligation arising out of a marital or family relationship, and to tax the payments to the person receiving the income. S.Rep. 1631, 77 Cong.2d Sess. p. 83; 5 Mertens Law of Federal Income Taxation, § 31A.01a; Bardwell v. C. I. R., 10 Cir., 318 F.2d 786; MacFadden v. C. I. R., 3 Cir., 250 F.2d· 545, cert. denied 356 U.S. 968, 78 S.Ct. 1007, 2 L.Ed.2d 1074. Sections 71 and 215 apply only where the legal obligation to pay periodic installments arises out of a family or marital relationship in recognition of the general liability to support a wife or family. H.Rep.No.2333, 77 Cong.2d Sess. p. 72 (1942–2 Cum.Bul. 372, 428.) In Bardwell v. C. I. R., supra, 318 F.2d at 789, we said that Congress sought to accomplish this purpose "while at the same time permitting a divorced wife or husband to receive a division of capital tax free." The stated cash sum of $67,000 in the instant case has all the elements and characteristics of a division of capital and none of support or alimony payments arising out of the general obliga-

her earnings with those of her husband toward the support of the family. Her employment continued until approximately 1936, and there were times during the periods when the husband was unable to find work that the wife was the sole support of the family.

Finally, in May, 1938, the McCombs Supply Company, which is now the major asset of the parties, was established. The parties invested in this business $500.00 which they had saved and $1400.00 which they borrowed from the wife's father. Mailing lists and catalogues were prepared by the parties, together with a third partner, and the business began.

In August of 1938, the husband and wife borrowed another thousand dollars to buy out the partner and then formed a corporation. For many years the wife countersigned checks and notes of the company and acted as secretary. At the present time, the wife has 3,000 shares of stock in her name and is secretary of the corporation. The husband has 53,-988 shares of stock, and 3,012 shares are owned by a third party. * * *

Considering the long married life of this couple, the contribution of the wife in the early years of marriage of financial help to keep the family going, the contribution of the wife in the later years by devoting her time and energy to the raising of the children and the making of a home, the source of funds which started the McCombs Supply Company, and considering further that plaintiff has no further right of inheritance in the estate of her husband which she helped build and in which she would have a one-half interest if the husband predeceased her and the parties remained married, and considering further that the Court is awarding the plaintiff the automobile and furniture, which value is in excess of the value of the furniture awarded to the defendant, and considering further the large amount of bills and family expenses the husband was required to pay by the stipulation and order of court dated January 11, 1957, the court feels that a fair award to the plaintiff as her share of the marital property is $90,000.00. * * * "

tion to support a divorced wife. The obligation to pay is absolute. The discharge of the obligation through an installment note was at the election of McCombs, and the liability is the same as though the note had been given to secure payment of a loan. We agree with the Tax Court that these payments were not in the nature of or in lieu of alimony or support money, but were to satisfy a $67,000 property right secured by McComb's note and, therefore, not deductible from McComb's gross income and were not income to his former wife. Bernatschke v. United States, 364 F.2d 400, 176 Ct.Cl. 1234; Taylor v. Campbell, 5 Cir., 335 F.2d 841; Soltermann v. United States, 9 Cir., 272 F.2d 387; Campbell v. Lake, 5 Cir., 220 F.2d 341; Scott v. United States, D.C.Ore., 225 F. Supp. 257.

Affirmed.