GEORGE M. CURLEY and ELSIE A. CURLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Curley v. Commissioner
Docket No. 6534-74.
United States Tax Court
T.C. Memo 1976-398; 1976 Tax Ct. Memo LEXIS 5; 35 T.C.M. (CCH) 1798; T.C.M. (RIA) 760398; December 28, 1976, Filed Steven N. Fischer, for the petitioners. Alan J. Garfunkel, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1968
$ 5,460.75
1969
18,329.94
Because of petitioners' concessions, *6 only one issue remains for our consideration, namely, whether a $10,000 lump-sum payment in 1968 to the former wife of George M. Curley and her attorney was deductible by petitioners as alimony under section 215. [1]
This case was submitted to the Court fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts filed by the parties is incorporated herein by this reference. Petitioners, George M. and Elsie A. Curley, are husband and wife who resided in Chatham, New York, at the time of filing their petition herein. They filed joint tax returns for 1968 and 1969 with the district director of internal revenue, Albany, New York. Because the only item in dispute is a payment to George M. Curley's former wife, hereinafter any reference to "petitioner" shall be to him. Petitioner was married to Irene Curley in 1934. On December 22, 1967, petitioner and Irene entered into a written separation agreement. The pertinent provisions of the agreement are as follows: Article II
*7 FINANCIAL PROVISIONS
During the joint lives of the parties, the husband shall pay to the wife, as alimony, the sum of $250 per week subject to the following: upon entry of a final decree of divorce, and in consideration of the amounts then to be transferred to the wife as provided for herein, weekly payments shall be reduced to $175. All payments to the wife shall terminate upon her remarriage. Contemporaneously with the execution of this agreement, the husband has deposited with Hill & Barlow, as escrow agent, the sum of $20,000 in cash, a promissory note in the amount of $20,000 without interest, payable on entry of a final decree of divorce, two deeds and bill of sale of personal property, copies of which are appended hereto. The husband shall make additional deposits with the escrow agent as follows: upon the entry of a decree nisi on the libel for divorce which the wife has filed in the Probate Court for Middlesex County, the sum of $18,000. The escrow agent shall hold said funds in savings accounts, U.S. Treasury securities or such other income-producing forms as, in its discretion, seems desirable. Said funds shall be distributed as follows: if, by November 15, 1968, no *8 final decree of divorce has been entered on the wife's libel, all of the funds, together with any interest or income accrued or received thereon, the two deeds and the bill of sale of personal property shall be transferred and paid over to the husband or his estate to be held and disposed of by him free of any claim or interest of the wife * * *. Upon entry of a final decree of divorce prior to the expiration of the escrow, as provided for above, the escrow agent shall pay over to the wife the sum of $40,000 as a lump-sum payment in consideration of the discharge by the wife of any and all past and future claims against the husband for support and maintenance except as provided for herein. The escrow agent shall pay over to the wife and her attorney, Abner R. Sission, the sum of $10,000 as additional alimony to enable the wife to cover certain legal and other expenses incurred by her in connection with the negotiation of this agreement. Any interest or income accrued or received by the escrow agent with respect to the aforesaid sums shall be paid over to the husband. The escrow agent shall apply the sum of $8,000, plus interest at 6-1/2 per cent from November 1, 1967 to the *9 date of said final decree, received or accrued thereon, to reduce the real estate tax arrears * * *. Upon the completion of said transfers to the wife, the escrow shall terminate. If the wife dies prior to the termination of the escrow, as provided for under various circumstances in the foregoing paragraph, all funds, the two deeds and the bill of sale of personal property shall be transferred and paid over to the husband free of any claim or interest in the wife's estate, except for $25,000 which shall be paid over to the wife's estate, and the husband agrees to make no claim against the wife's estate, or attempt to participate in any way in the administration thereof. If the husband dies before or after the entry of said decree nisi but before the entry of a final decree of divorce, the foregoing escrow agreement shall take effect as though a final decree had been entered as of the date of his death * * *. (Emphasis added.) Pursuant to such agreement, petitioner made the necessary deposits with the escrow agent. On February 6, 1968, the Probate Court of Massachusetts issued a decree nisi granting Irene Curley a divorce from petitioner to become absolute six months thereafter. *10 The decree incorporated all of the provisions of the December 22, 1967, separation agreement. Six months from the date of entry of the decree, the divorce became absolute. On August 7, 1968, the escrow agent under the separation agreement paid the $10,000 to Irene Curley and Abner R. Sisson. [2]
The issue to be decided is whether petitioner is entitled to deduct the $10,000 payment as alimony under section 215, [3] which allows a husband to deduct payments to his wife to the extent such payments are includible in the wife's gross income as alimony under section 71. Section 71 alimony payments include "periodic payments" which a husband is obligated to make under a divorce decree or written separation agreement "because of the marital or family relationship." *11 In contradistinction to "periodic payments" are installment payments of a fixed principal sum payable over a period of less than 10 years. As a general rule, such payments are not deemed to be alimony. Section 71(c)(1). However, when such payments are in the nature of alimony or support and subject to certain contingencies, [4] they are to be considered "periodic payments". Sec. 1.71-1(d)(3), Income Tax Regs.
Petitioners advance a three-pronged argument to support their claimed deduction. First, they point to the phrase "additional alimony" as it is used to describe the $10,000 in the separation agreement and argue that such characterization evidencing the intent of the parties should control. The short answer to this contention is that labels of this sort are not determinative. See Knowles v. United States,182 F. Supp. 150, 152 (S.D. Miss. 1960), affd. per curiam 290 F.2d 584 (5th Cir. 1961); William M. Joslin, Sr.,52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); see generally *12 5 Mertens, Law of Federal Income Taxation, sec. 31A.02 (1975 rev.). Petitioners' second contention is that George M. Curley did not directly undertake liability for his wife's attorney's fees; rather, he was obligated to pay a certain lump-sum to enable her to pay such fees. Petitioners are only partially correct, since the escrow agent was required to make payment to Irene Curley and the attorney. See also footnote 2 supra. In any event, the distinction which petitioners seek to draw is totally unwarranted. See F. Ewing Glasgow,21 T.C. 211, 214, 218 (1953). [5]
Petitioners' third and main contention is that the payment constitutes an allowable deduction, within the meaning of section 1.71-1(d)(3), Income Tax Regs., because it was subject to a contingency, i.e. the death of Irene, prior to the termination of escrow. In Ralph Norton, 16 T.C. 1216, 1218-1219 (1951), affd. 192 F.2d 960 (8th Cir. 1951), where we were dealing with identical language contained in section 22(k) of the Internal Revenue Code *13 of 1939, the predecessor of section 71, we said: The word "periodic" is to be taken in its ordinary meaning and so considered excludes a payment not to be made at fixed intervals but in a lump sum, and the fact that the statute made particular reference to periodic payments is some reason to believe that another kind of payment, that is, an initial payment in some larger and undivided amount, was considered in a different category. We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payment to be made here, but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him. At any rate, we think Congress failed to provide that such a payment was "periodic" and that, therefore, it is not within the statute. The presence of a contingency does not make a lump-sum payment such *14 as involved herein "periodic." The cases which established that such a contingency made installment payments over a period of less than ten years "periodic" did not confer the same status to a single payment such as is involved herein. See Commissioner v. Senter,242 F.2d 400, 404 (4th Cir. 1957), affg. 25 T.C. 1204 (1956). [6] A single lump-sum payment has consistently been held not to meet the requirement of periodicity contained in section 71. Sechrest v. United States,490 F.2d 102 (4th Cir. 1974); Commissioner v. Senter,supra; Lundgaard v. United States,346 F. Supp. 1351 (D. Kan. 1972); William M. Hardy,59 T.C. 857 (1973). In all of the foregoing cases, the lump-sum payment was required to be made on remarriage and was obviously subject to the contingency of prior death. *15 Moreover, we note that, by the terms of the agreement incorporated into the decree, Irene Curley was entitled to some $58,000 (including the disputed sum) and some property upon the finality of divorce. If she were to die prior to the termination of escrow, her estate would nevertheless be entitled to $25,000. On the record before us, we cannot say that such $25,000 payment did not include the $10,000 to cover the legal fees for which Irene's estate would be liable. In view of the foregoing, we find no basis for distinguishing the payment at issue from other payments of attorneys' fees which we have found to be nondeductible. See F. Ewing Glasgow,supra. See also, Joseph J. Clement,T.C. Memo. 1972-184; Jack Rose,T.C. Memo. 1971-147, affd. per curiam 459 F. 2d 28 (6th Cir. 1972); R. William Johnson,T.C. Memo. 1971-132. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue.↩
2. The parties have stipulated that "Irene Curley paid legal fees to Abner R. Sisson of $10,000.00 in connection with the disposition of her marital rights and the negotiation of" the separation agreement. In view of this stipulation, it seems clear that the payment by the escrow agent to Sisson was made on behalf of Irene Curley.↩
3. Petitioners rely solely upon the characterization of such payment as alimony; no argument is presented for deductibility as a legal expense under section 212.↩
4. Such contingencies are death of either spouse, remarriage of the wife, or change in the economic status of either spouse.↩
5. See also, Joseph J. Clement,T.C. Memo. 1972-184; cf. John W. Goff,T.C. Memo. 1964-114↩.
6. See also Salapatas v. Commissioner,446 F. 2d 79, 82 (7th Cir. 1971), where the legislative intent not to permit deduction of lump payments is discussed. We note that sec. 1.71-1(d), Income Tax Regs.↩ adopting the contingency rule, literally applies only to "periodic and installment payments" over a period of 10 years or less so that a single principal payment would not qualify thereunder.