WILLIAM A. MARTIN AND CAROL C. MARTIN, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11367–77.     Filed November 13, 1979.

256

*Asher B. Lans*, for the petitioners.
*Henry B. Miller*, for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in income tax against the petitioners of $7,056.53 for 1972 and $6,771.84 for 1973. At issue is petitioners' right to alimony deductions under section 215, I.R.C. 1954, for two payments made to the former wife of William Martin, Lila W. Martin. The case was submitted on a stipulation of facts.

Petitioner William Martin was married to Lila W. Martin in 1947. The couple experienced marital difficulties, and they ceased to live together in 1969. In anticipation of divorce, they entered into an agreement entitled "property settlement agreement" on May 15, 1972. By this agreement, they undertook to settle their obligations as to property rights, alimony, child support, and child custody. On the same day, the Circuit Court for the 17th Judicial Circuit in and for Broward County, Fla., entered a final judgment of dissolution of marriage in divorce proceedings between William Martin and Lila W. Martin. The property settlement agreement was specifically incorporated in the judgment, and the parties were expressly directed to comply with its terms. Also attached to the judgment, but not incorporated therein, was a letter from Ray H. Pearson, Esq., which undertook to clarify the terms of paragraph 10 of the property settlement agreement.

The property settlement agreement contains provisions for education of minor children of the marriage, health insurance for Lila W. Martin and all minor children, and life insurance on the life of William Martin for the benefit of Lila W. Martin and the minor children of the marriage. The agreement also provided that Lila W. Martin was to receive title to a house in Florida, subject to a mortgage to be obtained by William Martin; the

proceeds of the mortgage were to be used to repair and furnish the house. Permission was also granted to Lila W. Martin to remove various items of personal property from William Martin's home in Virginia.

Two provisions of the property settlement agreement purport to provide for alimony. Paragraph seven of the agreement provides:

7. The Husband shall pay or cause to be paid to the Wife as alimony the total sum of Three Hundred Ninety Three Thousand, Two Hundred Fifty and no/100 ($393,250.00) Dollars, to be paid to her at the rate of Three Thousand, Two Hundred Fifty and no/100 ($3,250.00) Dollars a month and shall be paid monthly over a period of ten (10) years and one (1) month, beginning on June 1, 1972 and monthly thereafter. Said monthly payments shall be fully taxable to the Wife and deductible to the Husband for income tax purposes. Wife agrees to pay from the monies provided for herein all expenses of the minor children except as is otherwise provided in this Agreement. Wife shall thereafter have the right to claim the minor children as dependents for all purposes including Federal Income Tax returns.

### Paragraph 10 of the agreement states:

10. The Husband shall pay to the Wife as additional alimony the sum of Twenty-Five Thousand and no/100 ($25,000.00) Dollars. One half of said alimony is to be paid to the Wife as soon as practicable but in any event prior to December 31, 1972. The other half of said sum of alimony shall be paid to the Wife prior to the end of 1973. These sums are in addition to the monthly payments provided for in paragraph 7 herein.

The letter attached to the divorce decree explains the purpose of this "additional alimony." The letter was dated May 15, 1972, and reads in relevant part:

By the terms of paragraph 10 of the Property Settlement Agreement entered into by and between Lila W. Martin and William A. Martin on May 15, 1972 the sum of $25,000.00 was provided to Mrs. Martin as an additional sum of alimony.

The purpose of this letter is to clarify the fact that the Husband had agreed to pay an additional sum of $10,000.00 by the terms of this paragraph and the additional $15,000.00 represents the complete and full obligation of the Husband to pay legal fees to the Wife's attorney, Mr. Linwood Cabot.

Of the $25,000.00, $12,500.00 is to be paid as soon as practicable but in any event prior to December 31, 1972. Of this first payment $5,000.00 shall belong solely to the Wife and $7,500.00 shall be paid over to the Wife's attorney, Mr. Linwood Cabot. The same division of funds shall be made of the second payment to be made prior to the end of 1973.

By this letter agreement the Husband, William A. Martin, with approval of his counsel agrees that if any of said alimony sums for attorney's fees is not deductible to the Wife then the Husband will indemnify her and pay such

additional tax obligation on the $15,000.00 as may be necessary. Mrs. Martin agrees to permit Mr. Martin or his then counsel to contest or question any ruling of the Internal Revenue Service regarding this $15,000.00 prior to her payment of any tax thereon.

The letter was signed by Mr. Martin's then attorney, Ray H. Pearson, and contains the signature of William Martin under the caption "Approved and agreed to."

The property settlement agreement also made reference to Lila Martin's attorneys' fees and costs in two paragraphs. These paragraphs provided the following:

13. The Wife agrees to pay her own attorney fees and will indemnify the Husband from any claims for legal fees throughout this litigation.

14. Further, Husband agrees to pay to Wife's attorney all the necessary Court costs and expenses which were advanced or incurred on behalf of the Wife by her Attorney throughout his representation of the Wife.

In 1972 and 1973, pursuant to the property settlement agreement, petitioner paid Lila W. Martin total sums of $35,200 and $51,687.29, respectively; of these amounts, $12,500 was paid each year pursuant to paragraph 10 of the property settlement agreement. Petitioners William A. Martin and Carol C. Martin, who were husband and wife at the end of calendar years 1972 and 1973, filed joint income tax returns for such years with the District Director of Internal Revenue, Richmond, Va. Deductions for alimony were claimed for these years in the amounts of $35,200 and $51,687.29, respectively. The Commissioner disallowed $12,500 of the claimed deductions for alimony for each year. The notice of deficiency asserted that the $12,500 payments were not alimony but were "amounts payable in discharge of a fixed sum to be paid within a definite period of less than ten years." The notice thus stated that the payments were not deductible because of failure to "qualify as periodic as defined in section 215." Petitioners thereafter timely filed a petition with this Court. At the time of the filing of the petition, William Martin was a resident of Arlington, Va., and Carol C. Martin was a resident of Miami, Fla.

Under the provisions of section 215, I.R.C. 1954,[1] a husband is allowed a deduction for alimony if the payment is includable in

---

[1] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

the gross income of his former spouse. Pursuant to section 71(a), payments are included in the former spouse's income if they are "periodic payments" received under a divorce decree to discharge the husband's legal obligations arising from the marital relationship.[2] And section 71(c)(1) provides that payments generally will not qualify as periodic if they are made to discharge a principal sum specified in the separation agreement. However, even if a principal sum is specified in the divorce decree, section 71(c)(2) provides that payments to discharge that sum may be periodic if the principal sum is payable in installments for a period greater than 10 years.[3]

The determination of whether or not a payment qualifies as periodic has been a thorny issue for courts since the time the alimony provisions were first included in the tax laws by the Revenue Act of 1942.[4] The legislative history contains no definition of "periodic." However, it is clear that periodic alimony payments must be for the purpose of support of the divorced spouse; payments to effect a division of the property of the spouses were not intended to be deductible.[5] It is also clear that the statutory term does not include installment payments of a principal sum specified in the divorce decree, unless the payments extend over more than 10 years.[6] Initially, this Court

---

[2]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

[4]See secs. 22(k), 23(u), I.R.C. 1939, added by sec. 120(a) to (b), Revenue Act of 1942, ch. 619, 56 Stat. 798 (current version at secs. 71, 215, I.R.C. 1954).

[5]H. Rept. 2333, 77th Cong., 2d Sess. 72 (1942).

[6]Sec. 71(c)(1), I.R.C. 1954 (n.3 *supra*). See S. Rept. 1631, 77th Cong., 2d. Sess. 84 (1942).

took a limited view of the alimony deduction, and held that payments were not periodic and thus were nondeductible if the divorce decree specified a principal sum to be paid (or if such a sum could be calculated from the decree) and payment was for a period of less than 10 years.[7] However, in a number of cases, the courts of appeal held that even if a principal sum was specified in the divorce decree, installment payments of the sum were periodic if they were subject to modification in the event that a contingency, such as the death or remarriage of the wife, occurred before the principal sum was fully paid.[8] These cases eventually received acceptance by the Commissioner.[9] Furthermore, the "contingency principle" found its way into the 1954 Code regulations. Under the present regulations, even if a principal sum is specified in the decree and the sum is payable in installments over a period of less than 10 years, the payment may still be deductible as alimony if it is in the nature of a support allowance and if it is subject to modification on the death, remarriage, or change of economic status of the spouses.[10]

---

[7]See, e.g., *Fidler v. Commissioner,* 20 T.C. 1081, 1091–1092 (1953), modified 231 F.2d 138, 142 (9th Cir. 1956); *Fleming v. Commissioner,* 14 T.C. 1308, 1311 (1950); *Estate of Orsatti v. Commissioner,* 12 T.C. 188, 191–192 (1949); *Steinel v. Commissioner,* 10 T.C. 409, 410–412 (1948).

[8]See, e.g., *Prewett v. Commissioner,* 221 F.2d 250, 252 (8th Cir. 1955), revg. 22 T.C. 270 (1954); *Davidson v. Commissioner,* 219 F.2d 147, 149 (9th Cir. 1955), modifying a Memorandum Opinion of this Court; *Smith's Estate v. Commissioner,* 208 F.2d 349, 353 (3d Cir. 1953), revg. in part a Memorandum Opinion of this Court; *Baker v. Commissioner,* 205 F.2d 369, 370 (2d Cir. 1953), revg. in part 17 T.C. 1610 (1952).

[9]See Rev. Rul. 59–45, 1959–1 C.B. 666. See also Rev. Rul. 60–250, 1960–2 C.B. 435, holding that if installment payments were subject to the contingencies of death of either spouse, remarriage, or change in economic circumstances of either spouse, then the payments were fully deductible as periodic payments even if they exceeded 10 percent of the principal sum specified in the decree.

[10]Sec. 1.71–1(d)(3), Income Tax Regs., provides as follows:

(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether—

(a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(c) The total amount which will be paid may be calculated actuarially.

It might be contended that these regulations go beyond the scope of the statute, particularly by their inclusion of contingencies supplied by State law;[11] the legislative history indicates that Congress envisioned a uniform determination of the tax treatment of payments to a divorced spouse under Federal law, without regard to variance in State laws.[12] Nonetheless, the regulations have been held to be consistent with the statute,[13] and we accept this determination for purposes of the decision of this case.

The payments in controversy in this case were made in two $12,500 installments over a period of 2 years. A principal sum, $25,000, was specified in the property settlement agreement. Under the words of section 71(c)(1) (n. 3 *supra*), these payments would not be periodic payments, and they would be nondeductible. Accordingly, in an effort to characterize the two $12,500 installments as periodic payments, the petitioners attempt to meet the test of the regulations and to show that under the divorce decree and Florida law, the payments were subject to the contingencies of a change in the economic circumstances of either spouse or death of the wife.[14]

It is clear that as to at least $7,500 of each $12,500 payment, petitioners' efforts must fail.[15] This Court and others have several times held that the husband's payment of the wife's legal fees for a divorce did not constitute alimony. *Rose v. Commissioner*, 459 F.2d 28 (6th Cir.), cert. denied 409 U.S. 879 (1972), affg. T.C. Memo. 1971–147, 30 T.C.M. 644, 40 P-H Memo T.C. par. 71, 147; *Baer v. Commissioner*, 196 F.2d 646, 649 (8th Cir. 1952), affg. on this issue 16 T.C. 1418, 1423 (1951); *Glasgow v. Commissioner*, 21 T.C. 211, 218 (1953). These decisions stand for two propositions. First of all, a payment in one lump sum of the wife's attorneys' fees for obtaining a divorce, a nonrecurring expenditure, cannot be a periodic payment under the statute. See, e.g., *Baer v. Commissioner, supra*, 16 T.C. at 1422–1423.

---

[11]See sec. 1.71–1(d)(3)(ii) (*a*), Income Tax Regs. (n. 10 *supra*).

[12]See H. Rept. 2333 (n. 5 *supra*).

[13]*Salapatas v. Commissioner*, 446 F.2d 79, 82 (7th Cir. 1971), affg. a Memorandum Opinion of this Court. See *Kent v. Commissioner*, 61 T.C. 133, 137–138 (1973).

[14]See sec. 1.71–1(d)(3)(i) (*a*) Income Tax Regs. (n. 10 *supra*).

[15]We need not decide whether the payments were made directly to Lila W. Martin, as urged by petitioners, or to Lila Martin's attorney, as suggested by respondent. The form of payment is irrelevant, since it is undisputed by petitioners that this sum was intended to be used to pay legal obligations incurred by Lila W. Martin in conjunction with the divorce. See *Curley v. Commissioner*, T.C. Memo. 1976–398, 35 T.C.M. 1798, 1800, 45 P-H Memo T.C. par. 76, 398, p. 1773.

Secondly, a payment of the wife's divorce-related attorneys' fees is for a purpose different from the usual alimony payment. See *Baer v. Commissioner, supra*. In essence, such a payment is more akin to a property settlement, a payment incurred solely because of the *termination* of the marital relationship, not in recognition of the ongoing duty of the husband to support his wife. As such, the payment cannot be deductible because it is not in discharge of the husband's support obligation. See sec. 71(a)(1) (n. 2 *supra*); sec. 1.71–1(d)(3)(i) (*b*), Income Tax Regs. (n. 10 *supra*). Although the aforementioned cases dealt only with situations where the wife's attorneys' fees were paid in one lump sum, their reasoning is equally applicable to situations where payment is made in two installments. The payments are still intended to cover an expense incurred in the termination of the marital relationship, not to fulfill the husband's continuing obligation to provide for his wife's support. Once this purpose is established, the details as to payment in one or two installments are irrelevant.[16]

We do not reach the contention of petitioners that the remaining $5,000 portion of each $12,500 payment was a periodic payment because it was subject to the contingencies of change in the economic circumstances of the parties or death of the wife under Florida law. Regardless of whether this test in the regulations is met, we conclude that the payment cannot be deductible as alimony because it has not been established that it was an allowance for support. See sec. 1.71–1(d)(3)(i), Income Tax Regs. (n. 10 *supra*).

We note first of all that the labels the taxpayers apply to payments provided in a separation agreement are not controlling for tax purposes; whether a payment is for support or for some other purpose is to be determined from the facts. *Bishop v. Commissioner*, 55 T.C. 720, 724 (1971); *Ryker v. Commissioner*, 33 T.C. 924, 929 (1960). See *Mirsky v. Commissioner*, 56 T.C. 664, 675 (1971). Thus, although payments made under paragraph 10 of the property settlement agreement are referred to as "additional alimony," this categorization by the parties is not controlling.

---

[16]See *Johnson v. Commissioner*, T.C. Memo. 1971–132, 30 T.C.M. 580, 40 P-H Memo T.C. par. 71,132 (1971). Cf. *Clement v. Commissioner*, T.C. Memo. 1972–184, 31 T.C.M. 903, 41 P-H Memo T.C. par. 72, 184 (1972). Even if payments are to be made for more than 10 years, a finding that they are in the nature of a property settlement and not for support requires that the payments are not deductible by the husband. *Lambros v. Commissioner*, 459 F.2d 69, 71 (6th Cir. 1972); *McCombs v. Commissioner*, 397 F.2d 4, 7–8 (10th Cir. 1968).

The agreement between William and Lila Martin, although entitled "property settlement agreement," does not detail the various properties owned by each party. However, apart from possible statutory rights (inchoate or otherwise) which the wife might have had in her husband's property, there are indications in the agreement that there was some jointly owned property to be disposed of by the agreement. Paragraph five of the agreement recites that "Each of the parties is informed of the properties he or she owns jointly, as well as individually." Paragraph 12 of the agreement also provides that Lila Martin is to receive a house encumbered by a mortgage. Paragraph 15 of the agreement provides that both parties to the agreement are to execute wills leaving one-half of their estates (not supplemented by inheritances from subsequent spouses) to the children of the marriage. Finally, the agreement states in the preamble and in paragraphs 3 and 16 that property rights are to be settled by the agreement. The presence of these provisions in the agreement leads to the conclusion that Lila Martin had some property rights which were to be settled by the agreement, although the value of these rights was not specified in the agreement or the record. Since Lila Martin did have some property rights, the payment, shortly after the divorce decree, of lump sums larger than the regular alimony payments provided by the decree is at least suggestive that it is associated with a property settlement, rather than a payment for support. See *Schwab v. Commissioner*, 52 T.C. 815, 818–819 (1969), affd. sub nom. *Houston v. Commissioner*, 442 F.2d 40 (7th Cir. 1971); *Norton v. Commissioner*, 16 T.C. 1216, 1218, affd. 192 F.2d 960 (8th Cir. 1951).

Another relevant factor is the separation of the payment plans for alimony in the property settlement agreement. The parties were cognizant of tax considerations when the agreement was drafted. Paragraph seven of the agreement, although specifying a lump-sum amount to be paid to the wife, is carefully drafted to fall within section 71(c)(2), I.R.C. 1954, which treats payments of sums specified in the divorce decree as periodic payments if made in installments over a period in excess of 10 years. If, as petitioners suggest, the receipt of payments by Lila Martin was subject to contingencies, and it was intended as alimony, then an additional amount payable under paragraph 10 could have been inserted in paragraph 7 without tax conse-

quences, as the Commissioner's regulations provide that the annual alimony deduction is not limited by section 71(c)(2) to 10 percent of the principal sum specified in the decree if the payments are subject to change on the occurrence of certain contingencies.[17] However, this is not what the parties provided. Paragraph 7 specified that payments received pursuant to its terms were to be fully taxable to the wife; paragraph 10 contains no such statement. When the parties themselves differentiate among payments to be made under a divorce settlement by placing them in different portions of the agreement and making them subject to different terms, it is proper for a court to also accord them different tax treatment. See *Bartsch v. Commissioner*, 18 T.C. 65, 68–69 (1952), affd. 203 F.2d 715 (2d Cir. 1953). Cf. *Wright v. Commissioner*, 543 F.2d 593, 598 (7th Cir. 1976), affg. 62 T.C. 377 (1974). Also, the property settlement agreement provided that the payments were to continue regardless of the death of the husband or the remarriage of the wife. This factor is indicative of a property settlement. See *Wright v. Commissioner*, 62 T.C. at 389; *Ryker v. Commissioner*, 33 T.C. at 930.

The petitioners make two major arguments in support of their contention that payments under paragraph 10 of the agreement were for the support of Lila Martin. First, they argue that the parties intended that Lila Martin would be taxable on the payments. It is true that the expectation of the parties that the wife would be liable for taxes on the payments has been said to be "highly indicative of a support agreement." *Taylor v. Campbell*, 335 F.2d 841, 845 (5th Cir. 1964). However, petitioner's contention in this respect is based upon the letter written by his attorney, quoted *supra* at pages 257 – 258, which was "Approved and agreed to" by petitioner alone, and not by Lila. It is not clear that Lila Martin ever agreed to such tax treatment. As we noted above, a statement as to such tax treatment was not included in paragraph 10 of the agreement. Furthermore, although the property settlement agreement was specifically incorporated in the divorce judgment rendered by the Florida court, the letter was not similarly incorporated, notwithstanding that it was attached to the judgment. Thus, it

---

[17]See sec. 1.71–1(d)(4), Income Tax Regs.

is not at all clear that all the parties to the divorce or the court rendering the judgment understood the tax treatment outlined in the letter to be part of the agreement of the parties. Accordingly, the parties' "agreement" as to the tax treatment of the "additional alimony," although entitled to some consideration, cannot be accorded controlling weight in determining whether the payments were for support or some other purpose. Moreover, even to the extent that the attorney's letter may be taken into account as to the tax consequences relating to the $25,000 lump sum, it dealt explicitly in this respect only with the $15,000 portion thereof allocable to the attorneys' fees.

The petitioners also contend that a support agreement is indicated by the fact that the respondent cannot point to any property rights relinquished by Lila Martin in exchange for the two $12,500 payments. However, as we noted above, the terms of the agreement make it clear that Lila Martin had some property rights that were to be settled by the agreement. The petitioners bear the burden of proving their right to alimony deductions. Rule 142(a), Tax Court Rules of Practice and Procedure. See *Roberts v. Commissioner*, 62 T.C. 834, 839 (1974). If, as petitioners suggest, Lila Martin did not have sufficient property rights in marital property to justify treating the payments under paragraph 10 as a property settlement, then the burden was on them to present evidence to that effect.

On the basis of the evidence before us, we conclude that petitioners have not established that the $12,500 payments in 1972 and 1973 were for the support of Lila Martin. Accordingly, in light of this finding and our conclusion as to the portion of the payments intended for Lila Martin's attorney, petitioner is not entitled to an alimony deduction for the $12,500 payments in 1972 and 1973.[18]

*Decision will be entered for the respondent.*

---

[18]Petitioners' counsel have claimed that petitioners will be prejudiced if a decision is reached on the ground that the "additional alimony" was not a payment for support. They suggest that fair notice of respondent's intention to raise this issue was not afforded them, alleging that it was not fairly raised in the notice of deficiency or the respondent's answer. They assert that this lack of notice has prejudiced their case because they failed to address the issue in their opening brief, and because they would have introduced evidence to show that the payments under par. 10 of the agreement were payments for the support of Lila Martin.

We find no merit to the petitioners' contention. In the first instance, petitioners' counsel carefully addressed the support issue in their reply brief, and their initial failure to discuss the issue was not prejudicial to the petitioners' case.

Petitioners' failure to introduce evidence that the payments in issue were for the support of Lila Martin may have been damaging to their case. However, if any additional evidence would have been helpful to petitioners' case, the failure of petitioners to present such evidence cannot be claimed to be the responsibility of the respondent. The notice of deficiency addressed to petitioners stated that the payments in question were "amounts payable in discharge of a fixed sum to be paid within a definite period of less than ten years." In order to avoid the result to which such a characterization of the payments would lead under the statute, petitioners were required to meet the requirements of the regulations; they needed to show that the payments were in some way subject to a contingency, *and* that the payments were in the nature of support. Sec. 1.71–1(d)(3)(i), Income Tax Regs. (n. 10 *supra*). Petitioners' counsel were well aware of this regulation, and their opening brief was directed to showing that the payments in issue were subject to the contingency of a change in the economic circumstances of the spouses. The failure of petitioners' counsel to adequately address the second requirement of the regulations on their original brief and to introduce evidence as to the nature of the payments in issue can be attributed only to an error in judgment on their part, not to a failure to be given fair notice of the respondent's position.

Even if we were to find that the deficiency notice did not give the petitioners "notice" of the positions the respondent intended to take in this case, we could not sustain their objections to respondent's conduct in this case. First of all, if they did not find respondent's answer sufficiently informative, they could have made a motion for a more definite statement of the respondent's position. See Rule 51, Tax Court Rules of Practice and Procedure. Moreover, it has long been established that the Commissioner's deficiency determination may be approved on grounds other than those stated by the Commissioner in the notice of deficiency. *R. T. French Co. v. Commissioner*, 60 T.C. 836, 849 n. 5 (1973); *Wilkes-Barre Carriage Co. v. Commissioner*, 39 T.C. 839, 845–846 (1963), affd. 332 F.2d 421 (2d Cir. 1964).