T.C. Memo. 1998-147


UNITED STATES TAX COURT


CATHERINE H. POOLE, f.k.a. CATHERINE H. DAMES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4492-97.                    Filed April 22, 1998.


<u>Marilyn K. Summitt</u>,  <u>Jeffrey B. Kahn</u>, and <u>Joseph M.
Goldstein</u>, for petitioner.

<u>Alison W. Lehr</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  By two separate notices of deficiency,
respondent determined the following deficiencies in petitioner's
Federal income taxes:

| Year | Deficiency |
|------|-----------|
| 1989 | $16,263 |
| 1990 | 15,814 |
| 1991 | 15,994 |
| 1992 | 13,469 |
| 1993 | 7,455 |

Following a concession by petitioner, the issue for decision is whether payments received by petitioner during the years in issue from her former husband pursuant to a divorce decree were alimony or a property settlement distribution. If the payments are determined to be alimony, then they are taxable to petitioner; if they are determined to be in the nature of a property settlement, then they are nontaxable. For the reasons set forth herein, we find that the payments are in the nature of alimony.

All section references are to the Internal Revenue Code.[1] All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time she filed her petition, petitioner resided in Ponte Vedra, Florida.

---

[1] The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 494, 795, extensively changed the alimony rules effective for divorce decrees executed after Dec. 31, 1984. This case involves sec. 71(a)(1) prior to its revision.

Background

Petitioner, known as Catherine H. Poole at the time of trial, was married to Dr. John R. Ibach, Jr. from March 24, 1959, until May 27, 1983. At the start of their marriage, petitioner worked as a registered nurse, supporting her husband, who was completing his residency following medical school. Dr. Ibach became a cardiovascular surgeon.

After petitioner gave birth to her first child in 1961, she no longer worked outside the home. Petitioner and Dr. Ibach subsequently had four more children. Although petitioner primarily stayed home to raise the children, she also assisted her husband in his office.

Petitioner's Divorce From Dr. Ibach

On May 27, 1983, petitioner and Dr. Ibach were divorced by the Circuit Court in and for Duval County, Florida, in a Final Judgment of Dissolution of Marriage (the divorce decree).[2] Petitioner and Dr. Ibach submitted separate financial affidavits to the Court, each dated May 27, 1983: Dr. Ibach reported the current value of his and petitioner's assets to be $943,750; petitioner reported the

---

[2] Attached to the Final Judgment of Dissolution of Marriage (the divorce decree) was a Stipulation (dissolution stipulation) between petitioner and Dr. Ibach (entered into on May 25, 1983), which was adopted and incorporated by reference into the divorce decree. A substantial portion of the divorce decree mirrors provisions of the dissolution stipulation.

value of her and Dr. Ibach's net assets to be $1,114,300.[3]  Thus, the value of petitioner's and Dr. Ibach's net assets at the date of their divorce was approximately $1 million.

The divorce decree states in pertinent part:

> 7.  As settlement of all claims the Wife may have for temporary and permanent alimony, Husband shall pay to Wife the lump sum of $500,000.00, with interest at 8% per annum on the unpaid balance, payable as follows:
>
> One hundred twenty (120) monthly installments of $6,050.00, and one (1) monthly installment of $3,016.53.  Said monthly installments shall commence on the 1st day of June, 1983, and continue on the first day of each month thereafter for the payment period of ten (10) years and one (1) month until paid in full.  The parties' intent is that this is lump sum alimony, payable over a period of more than ten (10) years as provided in section 71(c), Internal Revenue Code.  Said sum is not subject to modification, is payable regardless of Wife's death or remarriage, and shall be deductible by Husband and taxable to Wife. Provided, however, any of said lump sum remaining unpaid at Wife's death shall be paid into a trust created by Wife for the benefit of the parties' children, with Husband and a commercial bank of Wife's choice as co-trustees.  It shall not be a claim against Husband's estate in the event of his untimely death, so long as he maintains the life insurance provided for in paragraph 8 hereof, and, if not, shall be a claim against his estate for the unpaid balance.
>
> 8.  Husband shall, within sixty (60) days from May 25, 1983, make Wife the sole beneficiary of $500,000.00 in life insurance in

---

[3]    The discrepancy in amounts arises primarily from Dr. Ibach's reporting total liabilities of $406,000 and petitioner's reporting total liabilities of $281,000.

order to insure his obligation for lump sum alimony as set out herein. * * *

9. During their marriage, the parties regarded themselves as a joint economic unit or partnership sharing equally in the ownership of appreciable portions of their income and assets. Each participated diligently in the enhancement of such income and assets, contributing services, funds, counsel, ideas and other assistance as appropriate. They commingled their incomes and applied themselves jointly to the accomplishment of joint financial endeavors, intending that the accumulated fruits of their joint endeavors would be jointly owned property (whether held in joint or individual names). As and [sic] for an equal property exchange, the parties shall make the following transfers and payments in an effort to equitably distribute their estate:

a) Husband shall pay direct to Wife the sum of $50,000.00 cash on this date. Thereafter, Husband shall pay to Wife the sum of $50,000.00 one year from the date hereof, and $50,000.00 two years from date hereof, all without interest.

b) Husband shall convey to Wife, by appropriate instrument, all of his right, title and interest in the property located at 2636 Forest Point Court, Jacksonville, Florida 32217 * * *

c) Wife shall convey to Husband, by appropriate instrument, all of her right, title and interest in the marital home located at 1362 Mandarin Road, Jacksonville, Florida 32223 * * *

d) Wife shall convey to Husband by appropriate instrument, all of her right, title and interest in and to the following real property located at 2428 South Ponte Vedra Boulevard, South Ponte Vedra, Florida * * *

* * * * * * *

10. Wife shall forthwith release and transfer to the Husband any and all interest she has or asserts to the Husband's Profit Sharing and Pension Plan and further releases any claim to the John R. Ibach, Jr., M.D., P.A. and all of its assets.

11. Wife shall forthwith release and transfer to the Husband any and all interest she has or asserts to the Husband's Bache account and Husband's savings account.

12. Wife shall forthwith release and transfer to the Husband any and all interest she has or asserts to the Husband's Tax Shelter Investments.

*       *       *       *       *       *       *

17. Each party has agreed upon the custody, support and visitation of the minor children of the parties, and have also agreed upon alimony and property settlement * * *

Petitioner also received an automobile valued at $5,000, and Dr. Ibach agreed to pay for the minor children's college and graduate school education. Moreover, petitioner was relieved of any liability she had for outstanding loans and joint debts, including mortgage payments (with the exception of the mortgage on the Forest Point Court property) and responsibility for the children's education.

Both petitioner and Dr. Ibach were represented by counsel during the course of their divorce proceedings.

Between 1989 and 1993, Dr. Ibach made all the payments required under the terms of the divorce decree, including the

following principal and interest payments pursuant to Paragraph 7 of the divorce decree:

| Year | Total Paid | Principal | Interest |
|------|-----------|-----------|----------|
| Pre-1989 | $405,350.00 | $228,517.01 | $176,832.99 |
| 1989 | 72,600.00 | 52,789.10 | 19,810.90 |
| 1990 | 72,600.00 | 57,170.57 | 15,429.43 |
| 1991 | 72,600.00 | 61,915.70 | 10,684.30 |
| 1992 | 72,600.00 | 67,054.67 | 5,545.33 |
| 1993 | 33,266.53 | 32,552.95 | 713.58 |

Dr. Ibach also paid petitioner $150,000 pursuant to Paragraph 9a of the divorce decree.

## Petitioner's Subsequent Marriages

On June 14, 1986, petitioner married Thomas Dames and became known as Catherine H. Dames; this marriage subsequently ended in divorce.  In 1994, petitioner married Mr. Poole.[4]

## Petitioner's Federal Income Tax Returns

Petitioner filed joint Federal income tax returns with Mr. Dames for 1989, 1990, and 1991. She filed Federal income tax returns for 1992 and 1993 as a single taxpayer.  Petitioner did not include in income any of the principal Dr. Ibach paid her pursuant to Paragraph 7 of the divorce decree on any of these returns; she did, however, report on these returns the interest Dr. Ibach paid her (with the exception of $713.58 in interest she received from Dr. Ibach during 1993).

---

[4]     The record is void as to Mr. Poole's first name.

On his 1989-93 income tax returns, Dr. Ibach deducted as alimony the payments he made to petitioner pursuant to Paragraph 7 of the divorce decree.

Notices of Deficiency

Respondent sent a notice of deficiency to petitioner and her former husband Mr. Dames for their 1989-91 tax years, determining that petitioner improperly excluded from income $72,600 of alimony payments for each taxable year. Accordingly, respondent increased petitioner's taxable income for each year by $50,000. In the second notice of deficiency sent to petitioner for her 1992 and 1993 tax years, respondent determined that she improperly excluded from income $72,600 and $32,553 of alimony income for 1992 and 1993, respectively. Accordingly, respondent increased petitioner's taxable income by $50,000 and $32,553, respectively, for 1992 and 1993. (These determinations were based upon respondent's view that Dr. Ibach's payments to petitioner were taxable to her as alimony up to 10 percent of the principal sum in each year.)

OPINION

The issue for decision is whether payments Dr. Ibach made to petitioner pursuant to Paragraph 7 of the divorce decree during the years in issue were alimony or a property settlement. Petitioner contends that the payments were nontaxable, lump-sum installment payments of a property settlement, not in the nature of support. Respondent disagrees.

Section 71(a)(1) sets forth the requirements for inclusion in gross income of payments received pursuant to a decree of divorce or separate maintenance. In sum, the payments are includable in income if: (1) The payments are periodic; (2) the payments arise because of a marital or family relationship; (3) the payments are made pursuant to a decree of divorce or separate maintenance or pursuant to a written instrument incident thereto; and (4) the payor is under a legal obligation to make the payments.

With respect to the instant case, the requirements that payments be made pursuant to a decree of divorce and that the payor be under a legal obligation to make the payments are not in issue. The divorce decree of the Duval County Circuit Court, which incorporated the dissolution stipulation of petitioner and Dr. Ibach, satisfies these requirements. Nor is any problem presented regarding the classification of the payments as periodic. Under the general rules of section 71(c)(1), installment payments discharging a principal sum obligation, as opposed to continuing payments of an indefinite duration, are not treated as periodic payments. See also sec. 1.71-1(d)(1), Income Tax Regs. Section 71(c)(2) provides a statutory exception to the general rule of section 71(c)(1). Subject to a percentage limitation,[5] section

---

[5] The limitation of sec. 71(c)(2) is that "the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum."

71(c)(2) permits installment payments of a principal sum obligation to be treated as periodic payments if the period for payments extends more than 10 years beyond the date of the decree or agreement. See Warnack v. Commissioner, 71 T.C. 541 (1979). That is the case herein.[6] All other requirements of section 71(a)(1) having been met, the decisive question is whether the payments were made "because of the marital or family relationship". For the reasons set forth below, we believe they were.

The statutory phrase "payments * * * [imposed] because of the marital or family relationship" requires that the payments be in the nature of support rather than property settlement. Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Martin v. Commissioner, 73 T.C. 255, 265 n.2 (1979); sec. 1.71-1(b)(4), Income Tax Regs. Payments that are part of a property settlement are capital in nature and, therefore, are not deemed alimony subject to the provisions of section 71. Gammill v. Commissioner, 73 T.C. 921 (1980), affd. 710 F.2d 607 (10th Cir. 1982).

In evaluating whether a particular payment constitutes support or property settlement, the labels assigned to the payments are not determinative. Id.; Hesse v. Commissioner, 60 T.C. 685, 691 (1974), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975). In deciding the character of an award in a divorce or separation

---

[6]    The principal sum of the payments petitioner received was $500,000. Petitioner was therefore treated by respondent as if she had received alimony of no more than $50,000, or 10 percent of the principal sum, during each of the years at issue.

decree, great weight is given, however, to the language and structure of the decree. Griffith v. Commissioner, 749 F.2d 11, 13 (6th Cir. 1984), affg. T.C. Memo. 1983-278. In addition, an examination of surrounding facts and circumstances may be required. Yoakum v. Commissioner, 82 T.C. 128, 140 (1984); Gammill v. Commissioner, supra.

This Court has frequently looked to State law in considering whether payments between spouses constitute alimony or a property settlement. See Yoakum v. Commissioner, supra at 136. Under Florida law, following the termination of a marital relationship, the financially advantaged spouse must provide support and maintenance for the financially disadvantaged spouse. Fla. Stat. Ann. sec. 61.08 (West 1985). Clearly, in this case, petitioner was the financially disadvantaged spouse. Under Florida law, Dr. Ibach was obligated to make payments to petitioner for her support. We believe he did so pursuant to Paragraph 7.

Moreover, there was an equitable property division between petitioner and Dr. Ibach. Excluding the Paragraph 7 payments, there was almost an equal division of their property. See Eckroade v. Eckroade, 570 So. 2d 1347, 1349 (Fla. Dist. Ct. App. 1990). However, although "State law defines property rights, Federal law determines the tax consequences which attend these defined rights." Williams v. Commissioner, T.C. Memo. 1993-163 (citing Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987)).

This Court looks to the following factors which indicate that payments are in the nature of a property settlement rather than a support allowance: (1) The parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets; (2) the recipient surrendered valuable property rights in exchange for the payments; (3) the payments are fixed in amount and not subject to contingencies, such as the remarriage or death of the recipient; (4) the payments are secured; (5) the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage; (6) the needs of the recipient were not taken into consideration in determining the amount of the payments; and (7) a separate provision for support was provided elsewhere in the decree or agreement. Benedict v. Commissioner, 82 T.C. 573, 577-578 (1984); Beard v. Commissioner, supra at 1284-1285. Failure to satisfy one or more of the factors articulated herein may tend to indicate that the payments in question are more in the nature of a support allowance. See Beard v. Commissioner, supra at 1285.

Applying the above factors, we conclude that Dr. Ibach's payments to petitioner were in the nature of alimony. Our analysis of the factors in reaching our conclusion is as follows.

With regard to the first factor, we believe the agreement was intended to be a comprehensive and final settlement of all issues regarding custody, support, visitation, alimony, and property settlement between petitioner and Dr. Ibach. Paragraph 9 provides

for a division of the assets of petitioner and Dr. Ibach ("the parties shall make the following transfers and payments in an effort to equitably distribute their estate"). The only payments at issue, however, are those pursuant to Paragraph 7.

As indicated, great weight is given to the language and structure of the decree. See Griffith v. Commissioner, supra. The language of Paragraph 7 is explicit:

> As settlement of all claims the Wife may have for temporary and permanent alimony, Husband shall pay to Wife the lump sum of $500,000 * * * The parties' intent is that this is lump sum alimony, payable over a period of more than ten (10) years as provided in section 71(c), Internal Revenue Code. Said sum * * * shall be deductible by Husband and taxable to Wife.

This factor favors treating the payments as alimony.

With regard to the second factor, petitioner surrendered valuable property rights valued at or greater than $500,000, including: The Mandarin Road marital home; the South Ponte Vedra beach house; Dr. Ibach's profit sharing and pension plan; investments; and tax shelters. However, once she relinquished her rights to these properties under Paragraphs 9c, 9d, 10, 11, and 12, it does not appear that she had any further rights in tangible property to exchange for the Paragraph 7 payments. See Schottenstein v. Commissioner, 75 T.C. 451, 461 (1980). Thus, this factor favors treating the payments as alimony.

With regard to the third factor, the payments were fixed in amount and were not subject to contingencies. This factor favors treating the payments as part of a property settlement.

With regard to the fourth factor, although the total amount of the installment payments was not secured, in the event of Dr. Ibach's early death, petitioner was entitled either to have a claim against his estate or receive proceeds of his life insurance. This factor favors treating the payments as part of a property settlement.

With regard to the fifth factor, at the time petitioner and Dr. Ibach divorced, their net assets were valued at approximately $1 million. Petitioner received $150,000 pursuant to Paragraph 9a, the Forest Point Court house valued at $173,000, and a car valued at $5,000. Moreover, petitioner was relieved of loan obligations totaling at least $120,000 as well as her obligations to educate her children. The $448,000 total petitioner received is exclusive of the Paragraph 7 payments. Thus, the amount of the Paragraph 7 payments plus the other property awarded to petitioner exceeded one-half of the property accumulated by petitioner and Dr. Ibach during their marriage. This factor favors treating the payments as alimony.

With regard to the sixth factor, petitioner was financially dependent upon Dr. Ibach for 24 years. Petitioner and Dr. Ibach submitted separate financial affidavits to the divorce court. There appears to be a correlation between the amount of monthly

expenses petitioner incurred ($4,931.09) and the amount of monthly payments Dr. Ibach made ($6,050). We believe that petitioner's needs were considered when the amount of the Paragraph 7 payments was determined. Thus, this factor favors treating the payments as alimony.

Finally, with regard to the seventh factor, petitioner concedes that no separate provision for support was provided elsewhere in the divorce decree or dissolution stipulation. This factor favors treating the payments as alimony.

Considering all the facts and circumstances and the above Beard factors, we give great weight to the clear language, structure, and intent of the divorce decree and accordingly conclude that petitioner and Dr. Ibach intended to provide support and alimony for petitioner in Paragraph 7 of the divorce decree. Thus, we hold that the payments pursuant to Paragraph 7 are in the nature of alimony and therefore taxable to petitioner to the extent of 10 percent of the principal amount for each of the years in issue.

To reflect the foregoing, and the concessions by petitioner,

Decision will be entered
for respondent.