## BAKER et ux. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 261, Docket 22452.

United States Court of Appeals, Second Circuit.

Argued May 12, 1953.

Decided June 15, 1953.

Roy F. Wrigley and Samuel Brenner, New York City, for petitioners.

H. Brian Holland, Ellis N. Slack, A. F. Prescott and Carolyn R. Just, Washington, D. C., for respondent.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

As the facts are stated in the opinion of the Tax Court, reported in 17 T.C. 1610, they will not be repeated here.

1. The separation agreement made between the taxpayer Mr. Baker and his former wife, and incorporated in the divorce decree, provided that he was to pay her $300 per month from September 1, 1946 to August 31, 1947, and $200 a month from September 1, 1947 to August 31, 1952, but that, should she die or remarry, his obligation to make any such payments thereafter would cease.[1] The Tax Court held that these were "installment payments"—within § 22(k) of the Internal Revenue Code, 26 U.S.C.A.,—each discharging "a part of an obligation the principal sum of which is * * * specified in the decree". We do not agree.

Section 22(k) differentiates "periodic payments" and "installment payments." The latter, as the wording shows, must be parts of a "principal sum." Here no such sum

[1] Provisions for reduction of these payments in certain circumstances need not here be considered, for, as the Tax Court said, their only relevant effect was to extend the prescribed period of payments from a period of six years to a maximum of seven years and eight months.

was explicitly stated in figures. But the Tax Court said: "Simple arithmetic indicates that the principal sum to be paid was $15,600"—in other words, the addition of the several payments. Were there no contingencies, this conclusion might be sound. But there are contingencies which the Tax Court ignored. In doing so, it cited Steinel, 10 T.C. 409, at page 410, where it had said that "the word 'obligation' is used in § 22(k) in its general sense and includes obligations subject to contingencies where those contingencies have not arisen and have not avoided the obligation during the taxable years."[2] We see no justification for this interpretation.

We need not decide whether the words "principal sum" exclude all annuities, even those predictable actuarially, as would be the case here if the sole contingency reducing the payments were the wife's death. For here there was the further contingency of the wife's remarriage, and no proof of any actuarial computations in respect of such a contingency. Since a divorced wife's remarriage—in most instances in this respect unlike her death — depends upon some elements of her own seemingly unpredictable choosing, the computation seems as far beyond the reach of an educated guess as what will be the first name of the man or woman who will become President of the United States in 1983. True, in Commissioner of Internal Revenue v. Maresi, 2 Cir., 156 F.2d 929, we affirmed a decision of the Tax Court, 6 T.C. 582, which relied on American experience tables, relating to the chances of the continued celibacy of widows, in determining the chance that a particular divorced woman would take with a new spouse.[3] In the Maresi case, however, the question was whether we should appraise a concededly deductible estate at zero; we said, in effect, that there were means to guess at is value, unreliable perhaps, but still better than nothing, and that in such circumstances a poor guess was better than an almost certain mistake, i. e., to say that the estate was worth nothing.[4] And we there applied a statute dealing with the valuation of interests which, by their very nature, are guessy.[5] But the language of the statute before us in the instant case—"the principal sum * * * specified in the decree"—clearly implies an amount of a fairly definite character, and thus carries with it no such suggestion of uncertainty.[6] Consequently, in this respect, we reverse the decision of the Tax Court.

2. Although the agreement and decree did not expressly so state, we think the circumstances show that the parties intended that, as the Tax Court held, the insurance policies were to be but "security for the payment of the monthly amounts, to safeguard Viva [the wife] against the possible contingency of petitioner's death before he had fulfilled his contractual obligations." The fact that her interest, other than as such security, was so remote leads us to agree with the Tax Court in this respect, and therefore to affirm its ruling that the insurance premiums were not constructively received by her and were thus not deductible by the husband as "periodic payments." Cf. Blumenthal v. Commissioner, 3 Cir., 183 F.2d 15.

Reversed in part.

---

2. See to the same effect, Estate of Orsatti, 12 T.C. 188, and Fleming v. Commissioner, 14 T.C. 1308.

3. That here the wife in fact remarried in September, 1949 is irrelevant.

4. See Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477, 479.

5. See, e. g., Commissioner of Internal Revenue v. Marshall, 2 Cir., 125 F.2d 943, 946; cf. Andrews v. Commissioner, 2 Cir., 135 F.2d 314.

6. Cf. Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, 65: "It is well to remember that the concepts employed in construing one section of a statute are not necessarily pertinent when construing another with a distinguishable background."