Elizabeth Marie COKER, and Alfred J. Vogel, co-executors of the Estate of Alfred M. Coker, Deceased, and Elizabeth Marie Coker, Individually, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 03189.

United States District Court, D. Nebraska.

April 27, 1971.

Edmund D. McEachen and Deryl F. Hamann, of Young, Holm, McEachen & Hamann, Omaha, Neb., for plaintiffs.

Richard A. Dier, U. S. Atty. D. of Neb., for defendant.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court on the motions of both plaintiff and defendant for summary judgments. [Filings # 12 and 10].

The controlling facts in this case can be constructed from various filings and thus are undisputed matters of record. Accordingly, this action is an appropriate one for disposition by summary judgment. See Rule 56 of the Federal Rules of Civil Procedure.

On March 8, 1960, a divorce decree was granted in an action between Ella P. Coker and Alfred M. Coker, the deceased taxpayer on behalf of whose estate this action has been brought. Said decree incorporated a settlement agreement between the parties. That agreement generally provided that Ella Coker was to receive a life interest in a home, the taxes and upkeep required for the home, one thousand [$1000.00] dollars a month permanent alimony and the federal income tax incurred because of the receipt of such payments. The decree, after providing for some lesser benefits not here pertinent, also provided that Mrs. Coker was to receive thirty thousand [$30,000] dollars within ten [10] days of the entry of the decree and the sum of thirty thousand [$30,000] dollars within one year and ten days after the entry of the decree. It is these two payments with which this case is concerned.

The plaintiff's decedent filed timely income tax returns for the years 1960 and 1961 and paid the taxes shown thereon to be due and subsequently deficiency assessments were levied by the government and paid by the decedent, Alfred Coker. Timely claims for refund of the deficiency assessments plus interest were filed and were disallowed. The plaintiffs, co-executors of the Estate of Alfred Coker, then brought this suit for recovery of the deficiency assessments and a reversal of the Commissioner's determination that the two thirty-thousand dollar payments were wrongfully taken as a deduction by Alfred Coker. Thus this action is concerned with the deductibility of these two thirty-thousand dollar payments paid by the decedent to Ella Coker. At issue here is simply whether the two $30,000 payments qualified as a deduction from Alfred Coker's income tax returns for the years 1960 and 1961. If the two payments made are periodic payments for the purpose of the Internal Revenue Code [1954 § 71, and § 215, 26 U.S.C. §§ 22[k] and 23[u], then Mr. Coker was entitled to a deduction for the years in question and the plaintiffs are entitled to a recovery. If, however, the payments are considered to be installment payments on a division of capital within the meaning of 26 U.S.C. § 71 the I.R.S. was correct in refusing the deductions and plaintiffs would not be entitled to a recovery.

Sections 71[a][1] of the Internal Revenue Code of 1954 provide in general that "alimony" payments are includible in the gross income of the wife and Section 215[a] provides that such payments are deductible by the husband.

Section 71[c] provides that installment payments discharging an obligation of the principal sum which is stated in the decree is not deductible by the

husband.[1] The plaintiffs seek recovery by attempting to bring the payments here in question within the definition of "periodic payments" as contained in Section 71[a][1] of the Internal Revenue Code of 1954.

To qualify as periodic payments Reg. 171–1[d] [3] [i] provides the payments must meet the following conditions:

"[a] Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

"[b] Such payments are in the nature of alimony or an allowance for support."

The decree here in question provided in pertinent part as follows:

"1. In consideration of the release by First Party [Ella Coker] of her marital rights in any property of Second Party [Alfred Coker] Second Party shall supply to First Party a home for herself and Mary Jo Ann Coker, costing approximately Fifty Thousand [$50,000] Dollars, more or less, the title to which shall be placed in the Mary Jo Ann Coker Trust #2 with a life estate to First Party, with a reversion on the death of First Party to the Mary Jo Ann Coker Trust #2.

\* \* \* \* \* \*

"In order to bring about the purchase of said house, Second Party shall supply the First Party with sufficient funds to seek out and approve two or more locations and properties and submit same to Second Party for the approval of the one of his choice.

"First Party shall have the right to select the necessary furnishings and

---

1. Applicable to this tax refund case are Section 71 and Section 215 of the Internal Revenue Code of 1954.

Section 71 provides:

"ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

[a] *General Rule.*—

[1] *Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments [whether or not made at regular intervals] received after such decree in discharge of [or attributable to property transferred, in trust or otherwise, in discharge of] a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\* \* \* \* \*

"[c] Principal Sum Paid in Installments.—

[1] *General Rule.*—For purposes of subsection [a], installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

[2] *Where period for payment is more than 10 years.*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph [1] is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then [notwithstanding paragraph [1]] the installment payments shall be treated as periodic payments for purposes of subsection [a], but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

"[d] *Rule for Husband in Case of Transferred Property.*—The husband's gross income does not include amounts received which, under section [a], are [1] includible in the gross income of the wife, and [2] attributable to transferred property.

\* \* \* \* \*

Section 215 provides:

ALIMONY, ETC., PAYMENTS.

[a] General Rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71[d] or 682, the amount thereof is not includible in the husband's gross income. \* \* \* "

fixtures from the home now occupied by her and Mary Jo Ann Coker, to furnish the new home, except the drapes, carpets, and any items regarded as fixtures shall be left within the present home.

"Second Party shall pay the necessary moving expenses of First Party, in an amount not in excess of Five Thousand [$5,000] Dollars * * *.

"2. Second Party shall pay to First Party the sum of Thirty Thousand [$30,000] Dollars within ten [10] days of the entry of a decree in the pending action, and the sum of Thirty Thousand [$30,000] Dollars within one [1] year and ten [10] days after the entry of said decree.

"3. Second Party shall pay to First Party the sum of One Thousand [$1,-000] Dollars per month during the lifetime of First Party as permanent alimony, and such additional amount as is necessary to pay any State or Federal income taxes chargeable to First Party by reason of the receipt of said payments, all the foregoing is considered permanent alimony, the first payment to be made on the fifteenth of the month following entry of decree in the pending action, and on the fifteenth of each and every month thereafter.

"Second Party will deposit with The Omaha National Bank as Trustee, as a guaranty for the fulfillment of the obligations enumerated in Paragraphs 2 and 3 above, stock owned by Second Party in Coker Construction, Inc., of the present book value of Three Hundred Fifty Thousand [$350,000] Dollars, and in the event of the decline in the book value of said stock, Second Party will supplement it, so that there will be at all times in the hands of The Omaha National Bank, Trustee, stock of Coker Construction, Inc., having a book value of a minimum of Three Hundred Fifty Thousand [$350,000] Dollars and Second Party will furnish at least annually to said Trustee financial statement prepared by certified public accountants,

certifying as to the book value of said stock, which statement will be made available to First Party or her representative.

"Second Party shall have the right to withdraw all or any part of said stock upon delivery to The Omaha National Bank, Trustee, money or securities of a value sufficient to guarantee said monthly payments as before indicated, based upon the life expectancy of First Party, and the approval by a Trust Officer of The Omaha National Bank of the value of securities or amount of money necessary to bring about prompt payment of all of the obligations as contained in Paragraphs 2 and 3 above.

"If the death of First Party occurs prior to the death of Second Party, or in the event of the remarriage of First Party, then the payments required to be made to First Party shall be terminated * * *."

"9. Second Party will pay First Party's attorney fees in the total sum of Forty Thousand [$40,000] Dollars, Two Thousand Five Hundred [$2,500] Dollars of which has heretofore been paid under Court order, the balance of Thirty-seven Thousand Five Hundred [$37,500] Dollars to be payable within ten [10] days of the entry of decree in the pending divorce action and approval of this agreement by the Court."

Accordingly, it is now for me to determine whether the two thirty thousand dollar payments were "alimony, or in the nature of support," and subject to any of the contingencies as set forth in the Regulations.

After careful consideration of the authorities relied on by the plaintiff and defendant and a study of the entire settlement agreement I have concluded that the two thirty-thousand dollar payments made by Alfred Coker to Ella Coker within one year and ten days of the divorce decree were not in the nature of alimony or an allowance for support and accordingly cannot qualify as a deducti-

ble item for the years in question. In this determination I have considered the entire settlement agreement. Pursuant to that decree Mrs. Coker received substantial yearly payments that were obviously alimony. The two payments now in question, when considering their amounts and the time payable, simply cannot be considered to be in the nature of alimony.

There are several cases involving the issue here present where it was determined that there was a divisible scheme of payments partially periodic and partially installments on lump sum division of capital. *See* S. Brad Hunt, 22 T.C. 561; Edward Bartsch, 18 T.C. 65, affirmed 203 F.2d 715 [2d Cir. 1953]; Ralph Norton, 16 T.C. 1216, affirmed 192 F.2d 960 [8th Cir. 1951]; Smith's Estate v. Commissioner, 208 F.2d 349 [3d Cir. 1953].

In Smith's Estate, *supra* the terms of the divorce settlement provided that the wife was to receive $300 monthly for five years and $100 a month thereafter. The settlement agreement also provided that the husband should pay the wife $2,500 in ten equal semiannual installments. All payments were to cease in the event of the death or remarriage of the wife or death of the husband. The court, after citing with approval Baker v. Commissioner of Internal Revenue, 205 F.2d 369 [2d Cir. 1953], held that agreement was a divisible one and that the $300 and $100 monthly payments were periodic and deductible by the husband, but that the $2500 payments were not deductible periodic payments.

In Bartsch v. Commissioner, 203 F.2d 715, the Second Circuit affirmed a decision of the tax court where it had been determined that two types of payments were divisible. The Tax Court held:

"We see nothing inconsistent in treating the monthly payments under the first paragraph as 'periodic' and those under the second paragraph as 'installments'."

With the exception of *Smith's Estate* the remainder of the "divisible payment" cases are distinguishable from the facts of this case for in those cases the payments held to be installments were not contingent upon the death or remarriage of the wife. I cite these cases only for the purpose of illustrating the many cases where courts have divided payments into two types, and held one type of payment periodic and the other type an installment payment, and in so doing having disregarded various contentions that all payments were integrated and deductible.

I have read the authorities relied on by the plaintiff and find them all distinguishable from the instant action. In cases cited by the plaintiff there were findings that the payments were deductible and therefore in the nature of alimony. However, in each of the aforesaid actions the facts were so distinguishable from the present case as to render the authorities of little weight in support of the contention that here the payments are "in the nature of alimony." A review of these cases will better illustrate the differences I have reference to.

In Prewett v. Commissioner of Internal Revenue, 221 F.2d 250 [8th Cir. 1955] the Eighth Circuit had before it a divorce decree that provided that:

" * * * the wife shall receive Two Hundred Seventy [$270] Dollars per month alimony for a period of two [2] years commencing upon the date of the Interlocutory Decree. 'That in the event she should be married prior to the aforesaid term, the payment of alimony shall cease upon the date of the re-marriage.' "

The amount of the alimony was also dependent upon the husband maintaining a certain level of income. The Court concluded, in reversing a decision of the Tax Court, that the above described payments were periodic payments and thus deductible. In its opinion the court held:

" * * * where monthly payments of alimony are contingent and uncertain, and may be reduced or terminated upon the happening of certain events a principal sum payable in

**174**

money is not specified and the payments are periodic and therefore deductible." 221 F.2d at page 252.

In *Prewett, supra,* the court relied on a series of cases headed by Baker v. Commissioner of Internal Revenue, 205 F.2d 369 [2nd Cir. 1953]. In *Baker,* the Second Circuit overruled prior decisions and determined at certain payments that were contingent upon the death or remarriage of the former wife of the taxpayer were periodic and deductible. Plaintiff also cited *Baker.*

However, *Baker* and *Prewett* did not deem it necessary to discuss the Internal Revenue requirement that alimony payments, to be deductible must "be in the nature of alimony."

The reason why is obvious. In *Baker,* the divorce decree provided that Mr. Baker was to pay his former wife $300 per month from September 1, 1946, to August 31, 1947, and $200 a month from September 1, 1947, to August 31, 1952. These were the only payments made pursuant to the decree and this was the only support made by Mr. Baker to his former wife.

As previously pointed out in *Prewett* the only award made was $270 per month for a period of two years and was also the sole monetary support flowing from the divorced husband to the former wife.

In the only other case directly relied on by plaintiff, Warner v. United States, 204 F.Supp. 767 [S.D.Cal.1962] the challenged payments, like in *Baker,* and *Prewett,* were the only payments made for the support of the divorced wife.

Plaintiff has argued that, notwithstanding the two types of payments made pursuant to the decree, the two $30,000 payments can still be considered "in the nature of alimony" because of the need for financial adjustment required of a wife immediately after a divorce.

Plaintiff, however, did not cite any authority where the divorce decree provided for two schemes of payments, similar to the instant case. The closest fac-

tual situation is *Smith's Estate,* and there the court concluded that large sums paid over a short period of time, though contingent, were nevertheless "obvious installment payment[s]," when other obvious alimony payments were also awarded.

In connection with plaintiff's argument that the two payments were alimony because of additional requirements necessary to provide a basis of support for a divorced woman I have carefully considered the entire settlement agreement. As has been previously observed Ella Coker received a life interest in a $50,000 home. The taxes and maintenance of the home were to be borne by Mr. Coker. Ella Coker also received an allowance to search for a home, furnishings from the home she then occupied, and also for moving expenses that were incurred in that move. Attorney fees were awarded to her counsel. In effect, the carefully considered settlement agreement provided Mrs. Coker with funds for any unusual expenses that she might incur at the time of her divorce.

Undoubtedly Mrs. Coker found it necessary to make financial adjustments after her divorce but it would not appear under the circumstances present that such requirement necessitated the payment of the sum of $60,000 within one year and ten days of the divorce, so as to bring it within the rule of additional "support" requirement.

After receiving $60,000 in a year and 10 days, Mrs. Coker received nothing else in the form of "phase out" support to supplement her yearly support payments of $12,000 tax free dollars per year.

██ I have concluded that the facts of the instant action bring it within the rule announced in *Smith's Estate, supra.* I find no merit in plaintiff's contention that the *Smith's Estate* is distinguishable from this case because there the principal sum was stated in the settlement decree. Here the decree provided for the two $30,000 payments in the same sentence. The stating of $60,000 would have been duplicitous when the

total sum is so obvious. Further the fact that said payments were described as "permanent alimony" in the court decree is descriptive but not determinative. *See* Lounsbury v. Commissioner of Internal Revenue, 321 F.2d 925 [9th Cir. 1963].

Whenever there is a divisible scheme of payments the Court should carefully consider payments made in accordance with the divorce decree that results in a large sum of money flowing from one litigant to the other in a short time. Here the parties to the settlement agreement, Alfred and Ella Coker, felt that $12,000 tax free dollars per year was sufficient to support Ella Coker. I do not believe the parties intended that the $60,000 to be paid within one year and 10 days of the divorce decree was required as additional support. These two payments have all the earmarks of a payment made in satisfaction of a property settlement or division of capital as opposed to the characteristics of alimony or support payments. These payments are in my estimation "obvious installment payments."

Plaintiff argues that the requirement that payments be " * * * in the nature of alimony" comes from the Internal Revenue Regulation not the statute, and therefore said Regulation may be more restrictive than the statute. However, *Prewett, supra* establishes that the Regulation requirement that payments be "in the nature of alimony" is a requirement in this Circuit for the deductibility of the type of payments here considered.

I have further concluded that the payments did not satisfy any of the Regulation's requirements of contingency. The settlement agreement, which was incorporated into the decree, provided in Section 2 for the payment of two $30,000 payments, but did not set forth any contingencies that would prevent the payment of said obligations.

However, plaintiff attempts to establish contingencies by applying certain language from Section 3 to Section 2. In Section 3, paragraph 4, it is stated:

"If the death of First Party occurs prior to the death of Second Party, or in the event of the remarriage of First Party, then payments required to be made to First Party shall be terminated."

Plaintiff contends that the use of the word "payments" means the monthly alimony payments as set forth in Section 3 as well as the two $30,000 payments as set forth in Section 2. However, a careful reading of the entire settlement agreement indicates that the contingencies set forth in Section 3 are limited to the type of payments as set forth in that Section.

If it was intended that all the language in Section 3 was to apply to Section 2, there would have been no reason to divide the two types of payments into two sections. But plaintiff strongly urges that certain language immediately preceding the contingency language in the fourth paragraph of Section 3 substantiates his contention that said paragraph [¶4 of § 3] applies to Section 2. Paragraph 2 of Section 3 provides in part:

"Second Party will deposit with The Omaha National Bank as Trustee, as a guaranty for the fulfillment of the obligation enumerated in Paragraphs 2 and 3 above, stock owned by Second Party * * *."

Paragraph 3 of Section 3 provided that the Second Party could substitute money or other securities for the Coker stock provided the substitute money or securities was of an amount "necessary to bring about prompt payment of all of the obligations as contained in Paragraphs 2 and 3 above." [I have referred to these paragraphs as Sections 2 and 3]. Plaintiff contends that the above-referred to language is evidence that paragraph 4 of Section 3 applies to

Section 2. I do not agree. If it was the intention of the parties that paragraph 4 of Section 3 was to apply to Section 2 it would have been a simple matter to insert the phrase "as contained in paragraphs 2 and 3 above," after the word "payments" as was done in paragraphs 2 and 3 of Section 3. Further in Section 3 whenever there was reference to the monthly alimony payments said reference was to "payments" or "monthly payments", but when there was reference to monthly payments and to the two thirty-thousand dollar payments the reference was to "obligations" of the Second Party. The contingency paragraph [¶ 4 of § 3] refers only to "payments".

Also, there is no contingency that results by the operation of state law. Schrader v. Schrader, 148 Neb. 162, 26 N.W.2d 617 [1947] stands for the proposition that a decree of the type this action is concerned with is not subject to modification, and, where, as here, the payments are determined to be in the nature of a property settlement, said payments do not terminate by application of law on the death of the husband. *See* DeWaal v. DeWaal, 148 Neb. 756, 29 N.W.2d 371 [1947].

It is my conclusion that Section 2 stands by itself except where specific reference was made to this section in Section 3, and that the two thirty-thousand dollar payments were not contingent on the death or remarriage of Mrs. Coker.

In sum total the Court finds that the plaintiffs have failed to overcome their burden of proof to show that Commissioner's deficiency income tax assessment was incorrect. *See* Cleveland Chiropractic College v. C. I. R., 312 F.2d 203 [8th Cir. 1963].

It is ordered that judgment be entered for the defendant in conformity with the foregoing Findings of Fact and Conclusions of Law. Counsel for defendant shall submit a proposed judgment within fifteen [15] days from the date of this Order.