RAMON A. SHANE and MARY A. SHANE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shane v. Commissioner
Docket No. 3560-78.
United States Tax Court
T.C. Memo 1980-409; 1980 Tax Ct. Memo LEXIS 166; 40 T.C.M. (CCH) 1308; T.C.M. (RIA) 80409; September 22, 1980, Filed *166 Petitioner, Ramon, and his former wife, Jean, entered into an agreement which was adopted and approved by a divorce decree entered in 1968 under the terms of which petitioner was to pay Jean a "debt" of $76,000 in installments over a period of 6 years and $1,500 per month thereafter for two periods of 5 years each. Petitioner paid Jean $7,000 in 1972 and $12,000 in 1973. Held, the payments in issue were not periodic payments in the nature of support or alimony and were not taxable to Jean under sec. 71, I.R.C. 1954, and hence were not deductible by petitioners under sec. 215. John M. Carnahan III, for the petitioners. Robert P. Cona, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years ended December 31, 1972, and December 31, 1973, in the amounts of $3,365.40 and $5,776.50, respectively. The only issue for decision is whether payments made in each of those 2 taxable years by petitioner Ramon A. Shane to his former spouse are deductible pursuant to section 215, I.R.C. 1954. FINDINGS OF FACT Some of the facts were stipulated and they are so found. The *167 stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners Ramon A. Shane and Mary A. Shane, husband and wife, resided in Springfield, Mo., when they filed their petition in this case. They timely filed joint Federal income tax returns for the taxable years 1972 and 1973 with the Internal Revenue Service Center, Kansas City, Mo. Mary A. Shane is a petitioner herein solely by reason of having filed joint income tax returns with petitioner Ramon A. Shane. Accordingly, the term "petitioner" will hereinafter refer to petitioner Ramon A. Shane. Petitioner and his former wife, Jean L. Shane (hereinafter Jean), were married on June 14, 1962, and divorced in 1968. No children were born of this marriage. Petitioner and Jean each had a child from a previous marriage and during the course of this marriage petitioner adopted Jean's daughter and Jean adopted petitioner's son. While married to Jean, petitioner was completing the internship and residency portions of his medical education. The amounts petitioner earned during this period and the amounts earned by Jean were combined for their mutual support and the support of their *168 children. During this period Jean contributed to the family's support the total approximate sum of $76,000, which amount was greater than that contributed by petitioner. In 1968, at a time following petitioner's completion of his residency, petitioner and Jean decided to obtain a divorce.Subsequently, petitioner and Jean executed a Separation and Property Settlement Agreement (hereinafter agreement) on October 12, 1968. The terms of the agreement were reached during a series of negotiation sessions during one day, at which sessions both petitioner and Jean were represented by attorneys. An introductory clause to the agreement stated that the parties were desirous of adjusting their property rights in the event a divorce was granted. After reciting that the agreement could be incorporated in and made a part of any divorce decree and detailing the division of personal property, it was specifically provided: 7. Second Party [petitioner] acknowledges that First Party [Jean] has worked during all of their married life and has contributed to the support of the family and to the education of Second Party in the total sum of $76,000.00, which he acknowledges as a debt he owes to First *169 Party and is desirous of and agrees to repay the same in the following manner: (a) Beginning on October 15, 1968, and thereafter on the first day of each succeeding month, Second Party agrees to pay to First Party the sum of $500.00 to and including May 31, 1969. (b) Beginning on June 1, 1969, and thereafter on the first day of each succeeding month, Second Party agrees to pay to First Party the sum of $700.00 to and including May 31, 1970. * * * [Subparagraphs (c) and (d) increased the monthly payments to $800 for 1970-71 and to $900 for 1971-72.] (e) Beginning June 1, 1972, and thereafter on the first day of each succeeding month, Second Party agrees to pay to First Party the sum of $1,500.00 until said sum of $76,000.00 has been paid in full.In the event of the death of First Party prior to the payment in full of the above-mentioned debt of $76,000.00, the unpaid balance thereof shall be paid First Party's legatees and assigns at the same rate of $1,500.00 per month until said sum of $76,000.00 has been paid by Second Party in full.
8.If before the 1st day of November, 1974, the First Party shall have died, all payments due from Second Party to First Party, her legatees and assigns, *170 shall terminate with the payment in full of said $76,000.00 referred to in paragraph 7 herein. 9. If on the 1st day of November, 1974, the First Party shall be alive, the Second Party shall continue to pay, in addition to the $76,000.00 mentioned above, $1,500.00 per month on the first day of each calendar month for a period of five (5) years from and after November 1, 1974.If during this five-year period the First Party shall have died, then the balance of said five-year payments shall continue to be made at the rate of $1,500.00 per month to First Party's legatees or assigns. 10. If on the 1st day of November, 1979, the First Party shall be alive, the Second Party shall continue to pay, in addition to the sums mentioned in paragraphs 7 and 9 above, $1,500.00 per month on the first day of each calendar month for a period of five (5) years from and after November 1, 1979. The $1,500.00 per month payment during the five-year period beginning November 1, 1979, shall terminate if the First Party shall die or remarry during said five-year period, whichever one occurs first. On the 1st day of November, 1984, all payments due from Second Party to First Party shall terminate unless previously *171 terminated as hereinabove provided for. 11. To secure the payment of said $76,000.00 indebtedness as set forth in paragraph 7 hereof should Second Party's death occur prior to the full payment thereof, Second Party agrees that he shall maintain in force and effect two (2) Life Insurance Policies on his life with First Party as the beneficiary thereof to the extent of the unpaid balance then due on said $76,000.00 debt. Said policies shall be in the total sum of $75,000.00 to cover the payment of the debt due First Party, as set out in paragraph 7 hereof. * * * 14. The counsel for the parties have advised their respective clients that, after the payment of the debt owing to First Party, as set out in paragraph 7 hereof, all additional payments made by Second Party under the provisions of paragraphs 9 and 10 herein are deductible by him in computing Federal and State Income Taxes, and that such payments received by the First Party shall be includable in her income for Federal and State income tax purposes. 18. * * * Each party hereby releases and waives all benefits conferred upon him or her by reason of the common law or the statutes relating to marital rights, and releases and *172 waives all other rights in the estate of other, including inheritance and right to administer upon the estate of the deceased. The wife hereby specifically releases all rights to alimony, alimony pendente lite, maintenance and support money and any other rights which she may now have or hereafter have in the property of the Second Party by means of said marriage except as hereinabove set out. 19. This agreement shall be binding only if one of the parties shall in the next six (6) months be granted a divorce by some court of competent jurisdiction; and if such divorce shall not be granted to one of the parties within said period of time this Separation and Property Settlement Agreement shall be null and void. On December 5, 1968, petitioner and Jean were divorced.The agreement was approved by the State court and incorporated in and made a part of, and set forth verbatim in, the divorce decree. The decree stated that the parties' property rights would be adjusted in accordance with the agreement. During 1972 and 1973, respectively, petitioner made payments to Jean in the amounts of $7,000 and $12,000 pursuant to the terms of paragraph 7 of the agreement. [1] *173 For years prior to the taxable years in issue, petitioner did not recall deducting on his Federal income tax returns amounts paid to Jean. [2] During the years in issue, however, petitioner, on the advice of an attorney, did take deductions for the $7,000 and $12,000 payments made to Jean in 1972 and 1973, respectively. In 1974, in an attempt to obtain a modification of the payments required to be made to Jean, petitioner ceased making payments. Subsequently, petitioner and Jean agreed to modify the required payments. Based on this agreed-to modification, a court order was entered on December 2, 1976, modifying the divorce decree entered on December 5, 1968. The court order provided in pertinent part: (a) That on or before November 24, 1976, petitioner was to pay $7,500 to Jean; (b) That commencing on December 1, 1976, and on the first day of each month thereafter, petitioner was to pay $1,000 per month to Jean for maintenance, *174 which payment would terminate on the death or remarriage of Jean, or upon the total payment of $196,200; and (c) That all periods, contingencies, designation of and amounts of payments set forth in the property settlement were modified to conform to the terms of this order. The financial terms of the court order were premised on petitioner having made payments to Jean totaling $52,300 as of November 1, 1976. When this amount is added to the $7,500 and $196,200 payments called for in the court order, the sum is $256,000, the same total amount as was potentially payable under paragraphs 7, 9 and 10 of the agreement. In the statutory notice of deficiency, respondent disallowed the $7,000 and $12,000 deductions taken for the payments made in 1972 and 1973, respectively, on the grounds that they were not alimony payments within the meaning of section 71 and, thus, were not deductible under section 215. OPINION Section 215[3] allows a husband to deduct payments made to his wife which payments are includable under section 71[4] *176 *177 in the gross income of the wife. Section 71(a) includes in a wife's gross income "periodic payments" received in discharge of a legal obligation which, because *175 of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree or written instrument incident to he divorce. The statutory requirement that the payments be made "because of the marital or family relationship" in effect requires the payments be in the nature of support rather than in settlement of *178 some property interest of the wife. See sec. 1.71-1(b)(4) and (d)(3)(i)(b), Income Tax Regs.; Warnack v. Commissioner, 71 T.C. 541 (1979). As to the term "periodic payments," section 71(c)(1) excludes from the definition thereof "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument or agreement" (i.e., a lump sum).Two exceptions exist to the general rule of section 71(c)(1), one being section 71(c)(2) wherein it is provided that the term "periodic payments" includes installment payments of a principal sum which may be paid over a period ending more than 10 years from the date of the decree or agreement. A second exception to the general rule of section 71(c)(1) is provided in section 1.71-(d)(3), Income Tax Regs.[5] *180 Under this exception, the term "periodic payments" includes installment payments of a principal sum payable over 10 years or less if the payments are subject to termination upon the occurrence of one or more specified contingencies. [6] For purposes of this exception, the necessary contingencies may be set forth in the terms of the decree or agreement, or may be *179 imposed by local law. Sec. 1.71-1(d)(3)(ii)(a), Income Tax Regs.
Petitioner has the burden of proving that the payments made to Jean are deductible under section 215. New Colonial Ice v. Helvering,292 U.S. 435, 440 (1934). There is no issue as to whether the payments in 1972 and 1973 were imposed on petitioner under either the divorce decree or the agreement incident thereto. Thus, the issues for decision are whether petitioner has established both that the payments were in the nature of support and that they were periodic.
In determining whether petitioner has established that the payments in question were deductible, one question we need address is the effect to be given to the State court's order in 1976 *181 modifying the payments to be made to Jean. We conclude the order is to be given no effect with respect to the years before us, 1972 and 1973. Initially, there is no language in the modifying order which indicates that it was intended to have retroactive effect. After noting the amounts which petitioner had, or agreed to have, paid to Jean as of the date of the court order, provision is made for the payment of the amount which remained potentially payable under the original agreement and divorce decree. The entire tenor of the modifying order is of prospective application. See Wilson v. Commissioner, 49 T.C. 1 (1967); and Turkoglu v. Commissioner, 36 T.C. 552 (1961). [7] Moreover, even if the modifying order was intended to have retroactive effect, any retroactive modification which would effect the status of the payments under the divorce decree would generally be disregarded for Federal income tax purposes. See, for e.g., Gordon v. Commissioner, 70 T.C. 525, 530-531 (1978), and the cases cited thereat. A limited exception is provided to this general rule for those circumstances when a subsequent State court order is designed to correct an earlier court order because such earlier *182 order mistakenly did not reflect the intent of the court. See, for e.g., Newman v. Commissioner, 68 T.C. 494 (1977); Johnson v. Commissioner, 45 T.C. 530 (1966). There is no indication in the instant case that the divorce decree entered in 1968 did not reflect the intent of the court at that time or that the 1976 court order was designed to correct a mistake. Thus, even if the modifying order was intended to be retroactive, it would have no effect for purposes of our determination. For purposes of convenience, we will first address whether the payments were in the nature of support. This is a question of fact which must be answered by resort to all the facts and circumstances. Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543, F.2d 593 (7th Cir. 1976). "In making this factual determination, we are not bound by the labels attached to such payments by the parties in their agreement, nor by the references thereto in the divorce decree, nor by the characterization of such payments under State law." Joslin v. Commissioner, 52 T.C. 231, 236 (1969), *183 affd. 424 F.2d 1223 (7th Cir. 1970). Nevertheless, the actual intent of the parties is one of the most important factors to be considered, particularly when the agreement does not appear to be deliberately structured to take advantage of the tax laws. Thus, while we are not bound by the use of the term "debt" in paragraph 7 of the agreement, nor are we bound by the statement in paragraph 14 concerning the tax treatment of the payments, they must be given considerable weight in determining the intent of the parties and the character of the payments. As hereinafter discussed, the obligation to make the payments arose out of the agreement entered into by the parties, not the divorce decree, and the courts are reluctant to ignore the terms of a contractual obligation entered into by the parties. See Munderloh v. Commissioner, 48 T.C. 452 (1967). First, we do not agree with petitioner's contention that all the payments called for under the agreement must be considered a unified plan for purposes of section 71(a)(2). Payments to be made to Jean were set forth in three separately numbered paragraphs and they were not subject to he same conditions. The separation of the payments is *184 clearly delineated and, notwithstanding that the payments may have been part of an overall plan, we will not unify them for purposes of section 71(a). See Bartsch v. Commissioner, 18 T.C. 65 (1952), affd. 203 F.2d 715 (2d Cir. 1953); Hunt v. Commissioner, 22 T.C. 561 (1954); Coker v. United States, 327 F.Supp. 169 (D.Neb. 1971), affd. per curiam 456 F.2d 676 (8th Cir. 1972). [8] The payments here involved were a part of those required under paragraph 7 of the agreement, the gradually increasing payments that would total $76,000. It seems clear from the structure of the agreement and from the language used therein that the parties intended the $76,000 to be a repayment to Jean of the amounts she had used from her own funds to support the family while petitioner was interning and in residency. The agreement labeled it a "debt" and petitioner acknowledged it as a specific amount he owed Jean for her contributions in the past. The principal sum was computed, not by determining what was necessary for the *185 support of Jean, but by computing what she had contributed in the past. If Jean died before the entire $76,000 was paid, the unpaid balance was to be paid to her legatees and assigns, and payment of the full $76,000 was secured by insurance policies on petitioner's life. These payments were not intended to be payments in discharge of a legal obligation to support Jean in the future which, because of the marital relationship, was imposed on petitioner by the agreement and decree. See sec. 1.71-1(d)(1). [9] This interpretation is supported by the statement in paragraph 14 that counsel for both parties had advised their respective clients that, after payment of the debt referred to in paragraph 7, all additional payments made under the provisions of paragraphs 9 and 10 would be treated differently for tax purposes, being includable in Jean's taxable income and deductible by petitioner. We think the difference in the tax treatment of the first tier payments and the second and third tier payments must have been considered in the bargain reached by the parties and we would be reluctant to rearrange that bargain for tax purposes unless it is clear that the first tier payments were actually *186 for support as intended under section 71(a). The only evidence offered by petitioner in support of his position is his testimony that he did not understand the tax implications of the language used in the agreement; and the modification agreement entered into in 1976. Petitioner was represented by counsel in negotiating the original agreement and it is rather obvious from the structure of the agreement that counsel for both parties were fully aware of the tax implications, and we have no reason to believe that they did not properly advise their respective clients thereof. Petitioner's apparent failure to claim deductions for the payments made prior to 1972 supports this assumption. Certainly petitioner has not supplied us with the strong proof required to convince us that the statement made in paragraph 14 was incorrect. We have previously decided that the modification agreement *187 entered into in 1976 had prospective effect only so it would not be relevent to the payments actually made in 1972 and 1973. But even if it were relevant, we believe it would support our conclusion herein. It also required a lump-sum payment, $7,500, in addition to monthly payments. It simply reduced the amount of the principal sum to be paid, and added the reduction to the total amount that was to be paid on a monthly basis over a longer period of time. We also conclude that the payments were not "periodic" within the meaning of section 71(a). The parties do not dispute the fact that the $76,000 amount was a specified "principal sum" or that the payments to Jean in 1972 and 1973 were composed of installment payments of that principal sum. Sec. 71(c)(1). Thus, the question is narrowed to whether the payments are periodic because they are: (1) Payable over a period in excess of 10 years, sec. 71(c)(2); or (2) subject to termination upon the occurrence of a specified contingency, sec. 1.71-1(d)(3), Income Tax Regs.
Petitioner claims that the payments to Jean were "periodic" under both the section 71(c)(2) and the section 1.71-1(d)(3), Income Tax Regs., tests. The section 71(c)(2) *188 10-year exception is satisfied, petitioner contends, because paragraphs 7, 9, and 10 in the agreement, when taken together, require total payments over a period of 16 years. As to the section 1.71-1(d)(3), Income Tax Regs., contingency exception, petitioner claims that Missouri law provides the necessary contingency in that payments would be terminated upon Jean's remarriage.
The payments at issue made by petitioner in accordance with his obligation to pay $76,000 to Jean can satisfy the section 71(c)(2) requirement only if their payment can be considered together with the other payment provisions (paragraphs 9 and 10), since, standing alone, payment of the $76,000 amount would be completed in approximately 6 years. We have already concluded that the payments toward the $76,000 lump sum must be considered separately from the payments provided for in paragraphs 9 and 10. We accordingly hold that the payments in issue do not qualify as "periodic" under section 71(c)(2). Since the payments do not qualify as periodic under section 71(c)(2), the question then becomes whether they are periodic because they are subject to any one of certain specified contingencies. Sec. 1.71-1(d)(3), Icome *189 Tax Regs. The enumerated contingencies are the death of either spouse, remarriage of the wife, or change in economic circumstances. Sec. 1.71-1(d)(3)(i)(a), Income Tax Regs.Neither the terms of the agreement nor the divorce decree set forth any contingencies to which monthly installments of the $76,000 amount are subject, although payments to be made under paragraphs 9 and 10 are subject to varying contingencies. The absence of a specified contingency in the decree or agreement, however, would not preclude classification of the payments in issue as periodic if State law supplied the required contingency. Sec. 1.71-1(d)(3)(ii)(a), Income Tax Regs. Petitioner contends that the necessary contingency is supplied by a Missouri statute which provides for termination of "alimony" payments in the event of the wife's remarriage. [10] *190 The Missouri statute upon which petitioner relies begs the issue. It relieves the husband from further payment of alimony to the former wife upon her remarriage if the court entered an order providing for the payment of alimony. We have determined that the provision in the settlement agreement, approved by the court, for payment of the $76,000 was not a provision for payment of alimony; hence the statute is inapplicable. In addition, under Missouri law where the parties to a divorce decree execute a property settlement agreement prior to entry of the divorce decree, if a party's obligation to make a particular payment is grounded on the property settlement agreement rather than the divorce decree, such obligation is contractual and may only be modified upon the mutual consent of the parties or by reason of fraud, duress, or illegality. Keltner v. Keltner, 589 S.W. 2d 235 (Mo. 1979). [11] Thus if the source of petitioner's obligation to make the payments in issue was the agreement, the statute would not *191 subject the payments to the contingency of Jean's remarriage, which is the only contingency relied on by petitioner. Without going into detail, our examination of Missouri case law, see North v. North, 339 Mo. 1226, 100 S.W. 2d 582 (1936), and the Missouri cases heretofore referred to, and the circumstances surrounding the agreement, lead us to the conclusion that petitioner's obligation to pay the $76,000 was contractual rather than decretal. The whole tone of the agreement is contractual in nature, rather than a document designed to advise the court entering the divorce decree. See Wesson v. Wesson, 271 S.W.2d 214 (Mo. App. 1954). Furthermore, a Missouri court is not authorized to grant "alimony" which survives the wife's death. North v. North,supra.
We conclude that Missouri law would *192 not supply a contingency that would make the payments here in issue "periodic" under section 1.71-1(d)(3), Income Tax Regs.
Since we have determined that the payments made by petitioner to Jean in 1972 and 1973 neither were in the nature of support, nor were they periodic, we decide this issue in favor of respondent. Decision will be entered for the respondent. Footnotes
1. Petitioner did not explain why the amounts paid to Jean did not equal the amounts required to be paid in accordance with the terms of the agreement.
2. The income tax returns for the earlier years were not introduced into evidence; apparently they were destroyed prior to the trial of this case.↩
3. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income. 4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement.--If a wife if separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.
(3) Decree for support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. (c) Principal Sum Paid in Installments.-- (1) General rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years.--If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩
5. Sec. 1.71-1(d)(3)(i). Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. (ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether-- (a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or (b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (1)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or (c↩) The total amount which will be paid may be calculated actuarially. 6. The condition contained in sec. 1.71-1(d)(3)(i)(b), Income Tax Regs., that the payments be in the nature of an allowance for support merely restates the requirement imposed under sec. 71(a). Mirsky v. Commissioner, 56 T.C. 664, 672↩, n. 2 (1971).
7. Although neither party refers thereto, retroactive modification of alimony-type payments is statutorily impermissible. Mo. Stat. Ann. sec. 452.370(1) (Vernon).↩
8. See Bernstein v. Commissioner, T.C. Memo. 1978-84, wherein consecutive payments were also involved, affd.     F.2d     (80-2 U.S.T.C. par. 9543) (46 AFTR 2d 80↩-5489) (9th Cir. 1980).
9. Sec. 1.71-1(d)(1), Income Tax Regs., states that, "In general, installment payments discharging a part of an obligation the principal sum of which is * * * specified in the * * * agreement are not considered "periodic payments" and therefore are not to be included under section 71(a)↩ in the wife's income."
10. Mo. Rev. Stat. § 452.075 (1969) provides: When a divorce has been granted, and the court has made an order or decree providing for the payment of alimony and maintenance of the wife, the remarriage of the former wife shall relieve the former husband from further payment of alimony to the former wife from the date of the remarriage, without the necessity of further court action, but the remarriage shall not relieve the former husband from the provisions of any judgment or decree or order providing for the support of any minor children.
11. The distinction between contractual "alimony" and decretal alimony was changed, effective Jan. 1, 1974, by the Dissolution of Marriage Act Laws of 1973, p. 470, secs. 432.300, et seq. See In re Marriage of Haggard, 585 S.W. 2d 480 (Mo. 1979). These new provisions have no application to the issue before us. Mo. Rev. Stat., sec. 452.415 (1978); Lambert v. Lambert, 593 S.W.2d 613↩ (Mo. App. 1980).